[No. 39707. Department One. April 25, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
EDWARD HUSON, *Appellant*.*

*Reported in 440 P.2d 192.

*Egger, Richey & Eikenberry,* by *Jack A. Richey,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Herbert L. Onstad,* for respondent.

McGovern, J.—Thirteen-year-old Bonnie Zessin testified that she saw Robert E. Huson put his arm around her mother, take a black object from his pocket, hold it up close to her mother and fire two shots. Mrs. Tapio, Bonnie's mother, slid down along the washing machine and came to rest against the wall. She was dead.

Robert E. Huson was charged by information with the crime of murder in the first degree as follows:

> He, the said Robert Edward Huson, in the County of King, State of Washington, on or about the 28th day of January, 1967, with a premeditated design to effect the death of one Lorraine E. Tapio, a human being, willfully, unlawfully and feloniously then and there did shoot at, toward and into the body of the said Lorraine E. Tapio, with a certain deadly weapon, pursuant to RCW 9.95.015, to-wit: a pistol, then and there held by the said Robert Edward Huson, thereby mortally wounding the said Lorraine E. Tapio, from which mortal wounds the said Lorraine E. Tapio then and there died; . . . .

To this charge the defendant entered a plea of not guilty, and not guilty by reason of mental irresponsibility.

A verdict of guilty was returned, but a special finding for the death penalty was not. The defendant was then sentenced to life imprisonment. Post-trial motions were heard, denied, and this appeal taken.

The first assignment of error relates to an alleged plethora of inflammatory and prejudicial statements by the prosecutor. The following excerpts are taken from his closing argument:

> In California it is almost impossible to get a jury that doesn't have sex perverts on it. That is why California has lots of trouble.
>
> . . . [I]f this jury lets down their bars and says a jealous husband, a jealous suitor, can go out and commit cold-blooded murder, you, as members of this City of Seattle are going to be responsible for many, many killings of innocent people.
>
> . . . .
>
> . . . [A]nd our juries have been entirely too soft. They are made of jelly. . . .
>
> . . . .
>
> . . . [A]nd he [the defendant] is trying to bamboozle you the same as he has done Judges for the past twenty-five years.
>
> . . . .
>
> . . . [A]nd this man has been a criminal for twenty-five years. And he has got away with it. . . .
>
> . . . .
>
> . . . [A]nd this hoodlum here run[s] out upstairs and out through the front door and disappear[s] in the darkness of the night.
>
> . . . .
>
> I say to you, ladies and gentlemen of the jury, that there is only one thing to do with a man that does what he did in this case, is send him to fantasy land.
>
> . . . .
>
> And I want you to remember that when you get into the jury room, that any man who takes blood, by man shall his blood take.

As though the foregoing were not enough, this prosecutor then personalized to the jury as follows:

> I believe in the laws of the State of Washington. I believe in the Constitution of the State of Washington, have sworn to uphold it. I believe in the Constitution of the United States. I am a church member. I have a family in this community, lost a son in the war in Saigon, or son-in-law in the war in Saigon.

And, without a shred of supporting evidence, when referring to the fact that the defendant had registered in a hotel 2 nights before the murder under the name of the victim's estranged husband, he said:

Now, I will give you my version of it. He, at that time, had decided that he was going to get rid of her. And he went to the Seneca Hotel and he registered under the name of Richard Tapio, which is her estranged husband, and that he was going to get her up in that room, and poison her, strangle her, stab her, or whateveryou [*sic*] have, any way of getting rid of her, and leaving her body there until somebody found her and when the police came in, who is the first man they would have gone out and arrested but Mr. Tapio, her estranged husband? Because why should anybody else want to kill her except her estranged husband? He is the only one who had any interest in her. This man didn't. He was just a boy friend.

Now, isn't that logical, that he started to get ready to dispose of her on the 26th day of January, 1926, [*sic*] when he registered there under the name of Richard Tapio?

■ That the foregoing statements of the prosecutor constituted reprehensible conduct is without dissent. We have stated on prior occasions, and we reassert, that a public prosecutor is a quasi-judicial officer. He represents the state, and in the interest of justice must act impartially. His trial behavior must be worthy of the office, for his misconduct may deprive the defendant of a fair trial. Only a fair trial is a constitutional trial. *State v. Case*, 49 Wn.2d 66, 298 P.2d 500 (1956).

We do not condemn vigor, only its misuse. When the prosecutor is satisfied on the question of guilt, he should use every legitimate honorable weapon in his arsenal to convict. No prejudicial instrument, however, will be permitted. His zealousness should be directed to the introduction of competent evidence. He must seek a verdict free of prejudice and based on reason.

■ Though reprehensible, an improper jury argument is not of necessity prejudicial. Nor does it necessarily require a new trial. The adverse party may have legitimately waived his objections. *Seattle v. Harclaon*, 56 Wn.2d 596, 354 P.2d 928 (1960).

Testing the referenced statements in the light of the record in this case, we find: (1) that defendant's trial counsel is a highly competent, experienced criminal trial attorney;

(2) that at no stage of the proceedings did he make objection to the remarks attributed to the prosecutor; (3) that the opportunity for objection was constantly available; (4) that no curative instruction was requested.

In concluding, as we do, that defendant knowingly waived objection to the remarks, we are mindful of his counsel's closing argument:

> Your Honor, ladies and gentlemen of the jury. You have just heard an argument whose primary purpose was to inflame you. It was a tirade, and I ask you to accept it for what it was. Mr. Onstad has put on a performance, one that is backed by thirty-five to forty years of experience. Now he says that he has no personal interest in this case. He says that he is paid by the State, and he presents it to you as fairly as possible, and it is up to you to decide.
>
> Now, I will let you decide, after having heard that, just how fair he is; just how fairly he has presented this to you in argument. It was a tirade of the worst sort.

We are satisfied that strategy had stilled the voice of objection. And it may be that such strategy worked. Here the jury could have returned the death verdict, but did not. Defense counsel's method of handling the prosecutor's argument may well have been the reason.

■ We stand for the rule that learned trial counsel cannot willfully remain silent in the face of inflammatory, personalized remarks, attack the adverse counsel as unfair because of them, and then, upon contrary verdict, allege unfair trial on account of those remarks. If these were errors of judgment, even then they would not establish the violation of a constitutional right. *State v. Mode,* 57 Wn.2d 829, 360 P.2d 159 (1961).

We do not, by this holding, intend to undermine our decisions as laid down in *State v. Case, supra, State v. Reeder,* 46 Wn.2d 888, 285 P.2d 884 (1955), and the included cases. In those instances the misconduct was so flagrant that no instruction given by the trial court could have cured it. That is not the case here. *See also State v. Miller,* 66 Wn.2d 535, 403 P.2d 884 (1965).

Defendant's next assignment of error also relates to a portion of the prosecutor's closing argument, which was:

This man was up before the Superior Court and was given twenty years suspended sentence in July of 1966. Irrespective of the fact that he had been convicted of two felonies prior thereto, had been sent to Monroe, been sent to Walla Walla, had done eight months in the brig in the Navy, and had done also thirty days or fifteen days — whatever this record shows — in the brig at that time. He had been sent to jail I don't know how many innumerable times for drunk and assault and other minor things of which he did not even remember at the time, and if this Court would have had the gumption, in June of this year, to have given him twenty years in the penitentiary, which he deserved, Lorraine Tapio would have been living today.

On this occasion counsel objected and moved for a mistrial on the basis of improper argument. The learned trial court immediately and correctly advised the jury that they should consider that statement only with respect to consideration of credibility and, in the event of first degree murder verdict, to sentence. No error resulted.

Defendant then contends that a new trial should be granted because, before defendant testified, the prosecutor referred to prior crimes by the defendant.

Defendant's witness, Dr. Archibald Ruprecht, testified that defendant did not know the difference between right and wrong on the date of the offense. He based his opinion on a 3-hour conversation with the defendant during which time they discussed the defendant's past life, drinking history and the incidents leading to the arrest. On cross-examination, the prosecutor inquired, among other things, concerning the doctor's knowledge of defendant's prior convictions.

■ Generally, reference to prior convictions within the above framework is not permitted. However, here the defendant had interposed a defense of not guilty by reason of mental irresponsibility. As we said in *State v. Collins*, 50 Wn.2d 740, 759, 314 P.2d 660 (1957):

It is agreed that, when the defense is insanity, general or partial,

"  . . . *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity." 2 Wigmore on Evidence (3d ed.) 9, § 228, quoted in *State v. Odell* (1951), 38 Wn. (2d) 4, 20, 227 P. (2d) 710.

Under the stated plea, every act of the defendant's life was admissible, even if it tended to prove another crime. Inquiry about defendant's past record of convictions was, therefore, proper.

Prior to trial the court granted defendant's motion for production of certain items in possession of the prosecutor. Included was "[a]ny written or oral statements made by the defendant concerning the crime including a note which he is alleged to have written."

The record shows that the prosecutor's office first became aware of a particular note at the commencement of its case in chief. That note was marked as an exhibit, identified and offered. Objection was entered that the note fell within the terms of the order, had not been produced and that the offer should therefore be denied. The objection was well taken and sustained.

The note, supposedly written by the defendant, read "For a 25 bit whore" and was left at the home of the victim on Tuesday night before the homicide. The defendant admitted being at the home that night, admitted having quarreled with the victim just before the visit, and admitted that she was in the company of other men when they separated. He stated that he was angry.

Although he testified that he did not remember the note, defendant declined to either admit or deny its authorship. An expert, however, then identified the writing as being that of the defendant.

Under that set of facts the note was again offered. Defendant thereupon objected "because it is irrelevant to the issues, your Honor, and there is not sufficient identification." That objection was properly overruled. The evidence

touched on the subject of motive and the writing had certainly been identified.

Another pretrial order related to the appointment of psychiatrists Dr. Archibald Ruprecht for the defense and Dr. Jack Klein for the state. The order was entered in consideration of defendant's special plea of not guilty by reason of mental irresponsibility existing at the time of the commission of the act. During argument on the motion, defense counsel stated to the court that he would advise the defendant that he could not be compelled to talk to a state psychiatrist. Counsel further stated that he felt such was his duty and that the defendant had a constitutional right to remain silent and not incriminate himself.

In a lengthy and well-reasoned memorandum decision, the trial court pointed out, *inter alia,* that

> the State is placed at a great disadvantage when it must prepare against a plea of insanity, and if its psychiatrists are met with a wall of silence, they would have no way of forming an opinion as to the defendant's sanity at the time of the commission of the act.

To cover this possibility, the court's order provided:

> If the defendant chooses to remain silent when the State's psychiatrist attempts his examination, that fact may be shown to the jury at an appropriate time during defendant's trial.

Protective provisions relating to possible inculpatory statements by the defendant during the examination were properly a part of the order.

Defendant argues that since he is not required to answer and is constitutionally entitled to remain silent, then the fact of silence is also protected. Therefore, testimony to the effect that he refused to answer the inquiries of Dr. Klein should not have been admitted. He thus attacks that portion of the court's pretrial order which became effective during the trial.

▪ We do not agree. Again, because of defendant's special plea of mental irresponsibility, anything said or done by him was relevant to his mental condition and therefore admissible. *State v. Odell,* 38 Wn.2d 4, 227 P.2d 710 (1951),

and *State v. Collins, supra.* The record shows that he was aware that his mental condition was under investigation. It also shows that he was acting in concert with his defense counsel. His refusal therefore constituted evidence as to his mental condition. *See People v. French,* 12 Cal. 2d 720, 87 P.2d 1014 (1939).

Dr. Klein testified at the trial that he visited the defendant who declined to answer questions because "he didn't feel that he should go ahead with anything until he had his attorney's approval." The doctor thereupon telephoned defense counsel and asked what he, the doctor, should do. Over objection, the doctor then testified that counsel stated, "Well, there is no use bothering, I have told him not to proceed with the psychiatric examination." Defendant's objection was on the grounds of hearsay. We point out that the testimony was admitted for the purpose of showing what defense counsel told the doctor witness, not in proof of what counsel had told the defendant. That being so, it was not hearsay. *Moen v. Chestnut,* 9 Wn.2d 93, 113 P.2d 1030 (1941); *State v. Cunningham,* 51 Wn.2d 502, 319 P.2d 847 (1958).

The next assignment of error relates to a statement of defendant made to the arresting officer. Deputy Harold Wieland of the King County Sheriff's office was an acquaintance of the defendant. On February 2, 1967, the defendant telephoned Deputy Wieland, identified himself, and asked the deputy to come and get him. Upon meeting at the assigned place, defendant Huson testified to the following:

A. Well, he came up to me, and we shook hands. He told me that he was sorry to see that I was in this type of a predicament, and I told him, yes, I knew how it was. And so he was glad that I had called him, that we had been friends. So we started walking up the street. He asked me if I had the gun on me. I told him no. And he says, "Well, I don't want you to take any gun up in the jail with you, so I wanted to make sure you didn't have the gun," and I told him, no, the gun was at the hotel, and he says, "All right." Q. Now, before that was stated, did he advise you of any rights at all? A. No, we didn't talk about rights. Q. He didn't tell you that you had a right to

an attorney and that anything that you said could be used against you? A. No. He never did tell me that. I was told that after I got to jail.

On the basis of the foregoing, defendant argues that his motion to suppress the evidence, the gun found at the hotel, should have been granted under authority of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966). The now well-known dictates of that decision provide that a suspect in custody must be advised of his right to remain silent, that anything he says may be used against him and that he is entitled to be represented by legal counsel, free if he cannot afford one.

■ *Miranda* is not applicable. There, the defendant was under interrogation. Here, he was not. The court referred to cases of this pattern as follows: "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda v. Arizona, supra,* at 478. The trial court found that the statement of defendant, regarding the location of the weapon, was freely and voluntarily made. That it was knowingly and intelligently made is clear from the fact that defendant said he would only talk to Deputy Wieland. The statement was not responsive to a question. It was voluntary. *State v. Self,* 59 Wn.2d 62, 366 P.2d 193 (1961).

Defendant next questions the failure of the court to instruct on the lesser included offense of manslaughter. The court could not have legitimately done so. A careful examination of the record reveals no evidence of manslaughter in the case. Under all of the evidence only one of three verdicts could have been returned. Defendant was guilty of first or second degree murder, or he was mentally irresponsible at the time of the act. He could not have been found guilty of manslaughter. *State v. Moore,* 61 Wn.2d 165, 377 P.2d 456 (1963).

Defendant asserts that a new trial should have been granted on the basis of newly discovered evidence. Subsequent to verdict, defendant became aware of the fact that

the victim had a blood-alcohol reading of .22. The sample had been withdrawn from the victim's system some hours after death. Defendant contends that his defense of alcoholic blackout, and thus mental irresponsibility, is supported by this finding.

Additionally, it is stated that a psychiatrist and a psychologist examined the defendant after verdict and before sentencing and that, as a result of their interviews, examinations and tests, the psychiatrist concluded that defendant did not know the difference between right and wrong at the time of the homicide.

■ The trial court denied the motion for a new trial, purportedly on the basis that "it would not have made any difference." We agree. The claimed newly discovered evidence of insanity at the time of the act was merely cumulative. And the fact that Mrs. Tapio had been drinking does not give rise to even an inference that defendant was in an alcoholic blackout. He and the victim had been apart for the 6-hour period preceding the homicide. Granting or refusing a new trial for newly discovered evidence is within the discretion of the trial court, and this court will not interfere unless there is a manifest abuse of discretion. We find none here. *State v. Fackrell,* 44 Wn.2d 874, 271 P.2d 679 (1954).

■ And, finally, defendant urges a new trial because, over objection, the court allowed the jury to separate. The separation occurred during the course of jury voir dire. That being so, the jury had neither been selected nor sworn to try the case. RCW 10.49.110, stating that:

> Juries in criminal cases shall not be allowed to separate, except by consent of the defendant and the prosecuting attorney, but shall be kept together, without meat or drink, unless otherwise ordered by the court, to be furnished at the expense of the county.

was therefore not yet applicable. It takes effect only when the jury is sworn to try the case. *State v. Newcomb,* 58 Wash. 414, 109 Pac. 355 (1910).

The judgment and sentence is affirmed.

FINLEY, C. J., ROSELLINI and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.

June 12, 1968. Petition for rehearing denied.