THE STATE OF NEVADA, APPELLANT, v. LOUIS LEE CROCKETT, RESPONDENT.

No. 5466

September 9, 1968                    444 P.2d 896

*Harvey Dickerson,* Attorney General, and *George E. Franklin, Jr.,* District Attorney, Clark County, for Appellant.

*William S. Barker* and *Oscar B. Goodman,* of Las Vegas, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Louis Crockett was convicted of murdering Curtis Wheeler and sentenced to death. After the trial one Floyd Hamlet revealed himself to Crockett's attorneys as the person seen leaving the murder site with a shotgun, not Crockett, as a witness had testified. On Hamlet's statements Crockett's motion for a new trial was granted by the trial court from which the state appeals on the ground that the evidence did not meet the standards of NRS 175.535, subsection 7, and that thus the trial court's decision was an abuse of discretion.[1] State v. Bauer, 34

---

[1] NRS 175.535(7). "When new evidence shall have been discovered material to the defendant and which he could not, with reasonable diligence, have discovered and procured at the trial. When a motion for a new trial is made upon the grounds of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and, if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable."

Nev. 305, 122 P. 76 (1912); People v. Robarge, 262 P.2d 14 (Cal. 1953); State v. Huson, 440 P.2d 192, 199 (Wash. 1968).

Prior to Crockett's trial Hamlet was in jail awaiting trial on other felony charges. Hamlet, Crockett, Wheeler and others who were involved in the Wheeler case were all part of a vast network of narcotics traffic in the Las Vegas area. Wheeler's death was attributed to his performances as a police informer. The defense attorneys were aware of Hamlet, but not of his involvement with the Wheeler shooting although they had some indications that he might know something about it. They had been denied an interview with him in his cell by his attorney, and although the district attorney made a taped police interview with Clifford Epperson available to them, they said it was too unintelligible to be of substantial assistance. The recording allegedly referred to the Wheeler murder and named some people who were involved. Hamlet was not listed by the district attorney as a prosecution witness for Crockett's trial but apparently an assumption was drawn that he would be still in jail and available for the trial anyway. Instead, the district attorney secured Hamlet's release on his own recognizance in exchange for his promise to be a narcotics informer. Once out of jail he left the jurisdiction, and despite efforts of the police and the defense, could not be located for the trial. Subsequently Hamlet was located by the authorities and he made his evidence known.

Reviewing NRS 175.535(7) and this court's decision in Pacheco v. State, 81 Nev. 639, 408 P.2d 715 (1965), we find that the trial court did not abuse its discretion in granting Crockett a new trial. Crockett's defense was that he wasn't there when Wheeler was shot. Several witnesses supported that contention but obviously the jury did not believe them. It was Hamlet's testimony that it was he, not Crockett, who was at the crime scene. Thus the guilt or innocence of Crockett might well turn on that evidence.

When Hamlet finally did tell what he knew about the killing he named Cy Lee as the killer, that he, Hamlet, tried to stop Lee from shooting Wheeler. Such involvement implicates himself as well as Lee. Identifying the real killer as someone other than the defendant is not only material to Crockett's defense but establishes a real possibility of a different result on retrial. Furthermore, when we reviewed the statute's requirement of diligence in obtaining the newly discovered evidence no more should be expected of Crockett to locate Hamlet than the police for neither the police nor Crockett were able to find him.

Scrutinizing the record as we must do, State v. Stanley, 4 Nev. 71 (1868), and State v. Orr, 34 Nev. 297, 122 P. 73 (1912), Hamlet's contradiction of the witness Bingham who said that he recognized Crockett running from the scene of the crime is not one of mere impeachment, but goes to the essence of Crockett's guilt or innocence. In his function the trial judge properly evaluated the record and decided that a new trial was required. People v. Robarge, supra. We agree. The exercise by the trial court of the right to grant a new trial will be presumed correct and proper by the appellate court until the contrary is shown by the appellant. State v. Stanley, supra; State v. Orr, supra, at 301.[1]

Where, as here, identity is a crucial issue and the evaluation of testimony by the jury relating to it is prevented due process is denied. Lee v. United States, 388 F.2d 737 (9th Cir. 1968). The judgment of the trial court will not be disturbed when the judge has exercised his discretion following careful examination and analysis as demonstrated in this case.

Credibility is not the test of the motion for new trial, instead the trial judge must review the circumstances in their entire light, then decide whether the new evidence will probably change the result of the trial. To allow the semantic distinction between *might* and *probably* to send Crockett into the gas chamber would be as unjustified as the killing of the victim. Applying Pacheco, *supra,* is as much our function as that of the trial court. Beyond question if the jury believes Hamlet, a different result, acquittal of Crockett, must follow. The trial court properly assessed its function.

Affirmed.

THOMPSON, C. J., and BATJER, J., concur.

COLLINS, J., dissenting:

This case involves the willful murder of a narcotics informer. The jury, upon conflicting and substantial evidence, found respondent guilty of that murder and fixed his penalty at death. Respondent moved for a new trial on the ground of newly discovered evidence. The lower court granted that motion, set

---

[1] In Harrison v. United States, filed June 10, 1968, No. 976, if Hamlet refused to testify at the retrial his testimony from this proceeding could be used as evidence.

aside the conviction, and ordered a new trial. The state appeals that order and we are asked to review the correctness of the lower court's ruling. I am of the opinion that the lower court erred as a matter of law in granting the new trial; that the error of law does not concern a review of discretion of the lower court; and that we should set aside the order granting the new trial and reinstate the jury's verdict.

A review of the record on this appeal shows that Curtis Wheeler was an undercover agent for the Las Vegas Police Department whose duties were to purchase narcotics from known sellers and obtain evidence for the police to permit their arrest and conviction. An indictment had been returned against respondent Louis Crockett for violation of the narcotic laws upon evidence supplied by Wheeler.

On the morning of May 16, 1967 Crockett was to be arraigned in district court upon that indictment sometime after 9 a.m. He borrowed an automobile to get there.

On that same morning about 10 a.m., Curtis Wheeler, a driver for Dot's Cleaners received a call to pick up some cleaning at a given address in an isolated area of North Las Vegas. The address, unknown to him, was that of a vacant apartment. When he arrived at the door he was shot in the chest with a shotgun and instantly killed.

The assailant ran from the rear of the apartment and while crossing a parking lot was observed by David Bingham, a chance witness, for a considerable distance, which for a short time was as close as six to ten feet. Bingham observed that person to be carrying a shotgun partially concealed by a covering, saw him get into a parked car and be driven off by a woman driver with streaked hair. He recorded the license number of that automobile. Bingham then drove by the apartment from which he had heard the shot, observed the body of Curtis Wheeler in front and called the police. Some twenty to twenty-five minutes later the police located the auto in a parking lot with the hood and motor still hot and arrested respondent and Coretha Davis nearby. She had streaked hair.

Bingham identified Crockett by sight, both at a pretrial line-up and at trial, as the person he saw running from the apartment carrying the shotgun. He further identified him from a black shirt and light pants he observed, the same combination and color of clothing Crockett was wearing when arrested twenty to twenty-five minutes after the killing. Bingham, when shown a photo of Hamlet denied he was the person who ran past him carrying the shotgun. The keys to the automobile found by the police through the license number recorded by

Bingham were in Crockett's possession when arrested. Other testimony showed Crockett had borrowed that same auto earlier that day. Wheeler was to have been the principal witness against Crockett in the pending narcotics violation prosecution.

Crockett presented alibi evidence and witnesses that he was in other persons company and in another area of the city at the time of Wheeler's killing.

On that substantial and conflicting evidence the jury found Crockett guilty and fixed the penalty at death.

While the case against Crockett was under investigation and awaiting trial Floyd Hamlet was in jail on a parole violation and also awaiting trial for robbery. One Clifford Epperson was in jail the day Wheeler was killed, but was released on bail that very day.

Epperson gave a taped statement to the police prior to Crockett's trial in which he flatly accused Floyd Hamlet as being the paid shotgun killer of Wheeler instead of Crockett. This tape, claimed by respondent's counsel to be unintelligible, was heard by them prior to Crockett's trial. A transcription of the tape, some nine pages long, was not made until after Crockett's trial, but appears in the record before us. While we have not listened to the tape itself, the transcription is more than adequate to disclose Epperson's accusation against Hamlet. In fact in all nine pages there are only three places indicated by the transcriber as being unintelligible. Those three places in no way destroy the statements of Epperson's claim that Hamlet, not Crockett, killed Wheeler and that Hamlet and Crockett when dressed, looked much alike.

Also during August 1967, Floyd Hamlet gave a written, sworn statement to police in which he claimed he attended a meeting of several persons where the killing of Curtis Wheeler was discussed. Among others attending that meeting were Cy Lee and Louis "Brown" Crockett. The need discussed for killing Wheeler was that "someone" was going to court and they wanted him out of the way. He testified about a shotgun being produced at the meeting and that Cy Lee cut the barrel off with a hack saw. Money was produced to pay the person who would kill Wheeler. The plan of killing was discussed including the plan to lure Wheeler to the vacant apartment. In that and later discussions various persons were suggested as the one to do the killing but discarded because they would not have an adequate alibi. Hamlet then said it was decided that Crocket would do the killing and that his alibi was to be his attendance at court on that morning. He was to leave for court from the Town Tavern where everyone would see him, go to court and after

killing Crockett, return to the Town Tavern where everyone would see him again. A woman was to drive the car for Crockett because he couldn't drive.

While this statement was not shown to defense counsel prior to the trial, nevertheless, it was before the lower court at the time of the hearing of the motion for new trial. Floyd Hamlet made no suggestion that anyone but Crockett was to kill Wheeler.

About the time of Crockett's trial, Hamlet approached the District Attorney of Clark County with the contention that if he were released on bail he could make narcotic buys from any number of narcotics peddlers in the Las Vegas area and provide evidence for their arrest and conviction. The district attorney having decided to carry on the prosecution of Crockett for Wheeler's death, agreed with Hamlet's plan and appeared with him in district court and recommended he be admitted to bail on his own recognizance. The court approved the recommendation.

In the meantime Crockett's counsel had not seen fit to subpoena Hamlet as a witness notwithstanding the Epperson tape and a photo of Hamlet supplied by the prosecutor. Counsel stated they thought Hamlet would be available at trial and thus took no steps to assure his appearance.

Hamlet, upon being released from jail, immediately departed from Las Vegas and could not be found during Crockett's trial though sought by the police, the district attorney and defense counsel.

During Crockett's trial when defense counsel became convinced of the need and usefulness of Hamlet's testimony, they nevertheless sought no continuance until Hamlet could be located and returned to Nevada.

Following Crockett's trial and conviction Hamlet was located in Arizona and returned to the Clark County jail. While there, and upon learning for the first time (at least so he testified) of Crockett's conviction and sentence, Hamlet summoned defense counsel to his jail cell. On September 21 and 22, 1967 he gave them (1) a sworn affidavit, (2) a hand written statement, and (3) a sworn statement to a court reporter.

Upon those documents and the affidavit of one of his counsel setting forth his version of fact how and when the information from Hamlet became available, motion for the new trial was made.

A lengthy hearing was held by the lower court on the motion. Testimony was received from Floyd Hamlet, David Bingham, Oscar B. Goodman and others. At the conclusion the

district judge ruled that the motion was based upon newly discovered evidence consisting of an individual named Floyd Hamlet maintaining that he was the individual seen by the state's principal witness David Bingham rather than Louis Crockett at the time of Curtis Wheeler's murder; that Cy Lee and not Crockett murdered Wheeler; that Hamlet came forward after he learned of Crockett's conviction and death penalty; that the jury's verdict was necessarily based upon belief of Bingham's identity of Crockett; that Crockett presented alibi witnesses who were not believed by the jury; that despite the conflict there was sufficient evidence adduced for the jury to have arrived at the verdict they did even though the judge, had he been a member of the jury, would have been of a different persuasion; that the newly discovered evidence was such that the court felt it should be presented to a jury for determination as to its credibility; that such evidence, if presented in conjunction with the evidence adduced at the trial, *"might have resulted in a different verdict."*

The new trial was thereupon granted by the court.

The opinion of this court holds that under Pacheco v. State, 81 Nev. 639, 408 P.2d 715 (1965) the lower court did not abuse its discretion in granting Crockett a new trial; that since the guilt or innocence of Crockett might well turn on Hamlet's story a *real possibility of a different result* on retrial was established.

I do not think that is the issue at all. I am convinced that because the lower court was in error in the tests and standards it applied in ruling on the new trial we never reach the necessity of passing upon the exercise of discretion of the district judge at all.

An early California case People v. Sutton, 15 P. 86 (Cal. 1887), cited by Justice Traynor in People v. Beard, 294 P.2d 29 (Cal. 1956), which was relied upon by this court in Pacheco v. State, supra, holds, "to entitle a party to a new trial, on the ground of newly discovered evidence, it must appear—

"First, that the evidence, and not merely its materiality, be newly discovered; second, that the evidence is not cumulative merely; third, that it is such as to render a different result probable on a retrial of the cause; fourth, that the party could not with reasonable diligence have discovered and produced it at the trial; and, fifth, that these facts be shown by the best evidence which the case admits."

In an early Nevada case, Whise v. Whise, 36 Nev. 16, 131 P. 967 (1913), McCarran, J., said "Newly discovered evidence, to have any weight in the consideration of a trial court, must

be material or important to the moving party. Evidence on a matter collateral to the issue is seldom grounds for a new trial, and it is not sufficient that the new evidence, had it been offered in the trial *might* have changed the judgment. It must be sufficiently strong to make it probable that a different result would be obtained in another trial. The new evidence must be of such a decisive and conclusive character, or at least such as to render a different result *reasonably certain.*" In Pacheco v. State, supra, this court again followed that rule and approved it as a corollary of the rule of harmless error.

Here the trial court's finding did not accord with that standard. The judge said in his ruling, "The evidence, if presented in conjunction with the evidence adduced at the trial, *might* have resulted in a different verdict." He thus applied a much less stringent standard in testing the effect of the new evidence than the long time rule of this court requires. His opinion and finding that the new evidence *might* have resulted in a different verdict, has been specifically rejected in Whise v. Whise, supra. The trial judge who heard the witnesses, passed upon their credibility and assigned weight to the evidence before him on the new trial motion was convinced in his own mind that the new evidence, together with that introduced at the trial *might* result in a different verdict. It is not our function to substitute our judgment for his upon the record before us. Nor may we take the position that he really meant one thing when he in fact said another.

Neither is the result an unfair one in light of all the evidence in the record. The judge said of the trial before the jury which convicted Crockett, there was sufficient evidence for them to have arrived at the verdict they did. The fact that he would have reached a different verdict had he been a member of the jury is of no moment, because to the jury alone belonged the duty of resolving the conflicting evidence.

The conviction in no way depended entirely upon the eyewitness identification of Crockett by David Bingham. As pointed out in the factual summary above there was much other circumstantial evidence linking Crockett to the killing.

Moreover, I feel the trial judge's order granting the new trial in this case is legally deficient in other respects. It appears from the authorities that a trial court when considering a new trial because of newly discovered evidence must make cumulative findings and reach definite conclusions upon several factors making up the ground before granting it. As seen in People v. Sutton, supra, to entitle a party to a new trial on the ground of newly discovered evidence there are at least five factors which must be found to exist simultaneously by the trial court before

it can grant the new trial. They are (1) evidence must be newly discovered, (2) is not cumulative, (3) renders a different result probable, (4) that the party could not with reasonable diligence have discovered and produced it at trial, and (5) that those facts be shown by the best evidence the case admits.

There are additional requirements under Nevada case law. They are (6) materiality of the evidence to the movants cause, Pacheco v. State, supra, (7) that it is competent and relevant, State v. McNeil, 53 Nev. 428, 4 P.2d 889 (1931), (8) that it does not attempt only to contradict a former witness or to impeach or discredit him, Whise v. Whise, supra.

The trial court's order in this case fails to find facts or state conclusions on any but one of those elements. In fact the only one he discussed in his decision at all was the third ground. We may not supply those findings and conclusions and for such failure the order is not sustainable as a matter of law.

Granting of new trials should be approved with caution by the lower courts, because they tend to prolong litigation; give the losing party an opportunity to retry his case with the additional benefit of hindsight; afford new witnesses opportunity to conjure up testimony of doubtful veracity tailored to upset an otherwise fairly determined result. See Pinschower v. Hanks, 18 Nev. 99, 1 P. 454 (1883).

I would reverse the order granting the new trial and reinstate the jury's verdict.

MOWBRAY, J., concurs in the dissent.