HOSIE OLIVER, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 5686

July 1, 1969                    456 P.2d 431

*James D. Santini,* Public Defender, *Anthony M. Earl,* and *H. Leon Simon,* Deputy Public Defenders, Clark County, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *Addeliar D. Guy,* Deputy District Attorney, Clark County, for Respondent.

# O P I N I O N

By the Court, COLLINS, C. J.:

This appeal is from a conviction for possession of narcotics and denial of a motion for new trial. We affirm both the conviction and the order.

On May 21, 1966, at approximately 11:30 p.m., appellant, Hosie Oliver, and Johnny Benson were observed by Officers Patrick Stevens and Walter Allen standing at an intersection in Las Vegas, Nevada. Officer Stevens observed appellant give what he described as a brown piece of paper to Johnny Benson. This observation was made from a moving patrol car at a distance of 25 to 35 feet. He told Officer Allen to "make a fast U-turn. A pass has been made." As the officers turned their patrol car around, Mr. Benson turned and walked hurriedly in a direction away from them.

Officer Stevens continued watching Mr. Benson's right hand, the hand in which he had received the piece of paper, until they had made the U-turn and approached him. The piece of paper remained clutched in his right hand until the patrol car pulled alongside of Mr. Benson, at which time Mr. Benson discarded the paper. The officers retrieved the paper, which contained a gelatin capsule containing a white powdery substance which was identified at trial as being heroin. Mr. Benson was placed under arrest.

Approximately 30 minutes later, the officers observed appellant approaching the vicinity of Mr. Benson's arrest, and appellant was arrested and searched.

Appellant testified at the trial that he was the person the officers observed standing with Mr. Benson at the intersection. He claims that Mr. Benson asked him for a dime to make a phone call and that it was a dime that the officers observed him give to Mr. Benson.

A criminal complaint was filed against Benson and appellant on May 21, 1966. A preliminary hearing was held against appellant only on March 4, 1968, and appellant was bound over for trial, which began March 25, 1968.

During the voir dire examination of the trial jurors, appellant's counsel examined the first prospective juror on issues of law. The trial court refused to allow further examination of prospective jurors on those issues and informed both counsel he would not allow them to go into anything touching upon the jury instructions. Appellant's counsel then attempted to make an offer of proof along that line for the record but was precluded from doing so by the court.

In voir dire examination of the jurors by the trial judge, they were asked collectively about their ability to apply the presumption of innocence until guilt was shown beyond a reasonable doubt. There were no disqualifying responses or challenges made on that ground.

The trial judge, after completing a basic type of voir dire examination, allowed counsel free hand, except for the above-stated limitation, in examining prospective jurors as to their disqualification or for any cause or favor which would prevent them acting fairly. A verdict of guilty was returned on March 26.

On April 19, 1968, appellant filed a motion for a new trial based upon newly-discovered evidence.

The affidavits in support of appellant's motion for new trial disclose the following: After Benson and appellant had been arrested, Benson entered a plea of guilty to possession of narcotics on March 13, 1968. Sentencing was set for April 10, 1968. On March 21 or 22, Mr. Earl of the public defender's office, who represented appellant, talked with Benson with the permission of Benson's attorney, and at that time Benson informed Mr. Earl that he would take the stand in appellant's trial and testify that appellant did not give him any heroin but rather only gave him a dime. A subpoena was issued and served upon the Las Vegas City Jail, where Benson was in custody. Benson was brought to court on the day of the trial, and at that time informed Mr. Earl that on advice of counsel he would invoke his privilege against self-incrimination if put on the stand. Mr. Earl decided not to put Benson on the stand. Benson states in his affidavit that he feared that testifying for appellant would be detrimental to his chances of probation on the offense to which he had recently pleaded guilty. On April 11, 1968, Benson was sentenced to two to five years imprisonment. Thereafter, he was willing to testify for appellant, and appellant claims that this evidence was grounds for new trial.

The court held a hearing on appellant's motion for new trial. At that hearing, Benson testified that on the night in question he approached appellant and asked him for a dime. Appellant

gave him a dime and nothing more. Benson testified he received the heroin from one John Baxter about an hour before he met appellant and carried it in his hand that entire hour. When appellant gave him the dime, he put that dime in his pocket.

The state put Johnnie Baxter on the stand. He testified that he knew Benson but that he did not, on May 21, 1966, or at any other time, give Benson a capsule of heroin.

Officer Stevens testified that when he arrested Benson he "shook him down" to determine if he had any other narcotics in his possession and that he found no dime or any other money at all in Benson's possession at that time.

The booking slip on Johnny Benson was placed into evidence and the "chief jailer" of the Las Vegas police department testified that if Benson had a dime at the time of his arrest it would be indicated on the booking slip. The booking slip indicated that he had no money in his possession at the time of booking.

After hearing the above testimony, the trial judge determined that a new trial should not be granted.

The issues for our decision are these:

I. Did the trial court err in refusing to allow argument, discussion, or comment by counsel during voir dire examination of prospective jurors concerning the jury instructions which the court would give?

II. Did the trial court err in denying appellant's trial based upon newly discovered evidence?

1. Was curtailment of appellant's voir dire examination of prospective jurors by refusing to allow him opportunity to interrogate on issues of law error? We think not.

Voir dire examination of prospective jurors has for its purpose a determination whether, if selected as trial jurors, they can and will, in accordance with their oath, render to the defendant and the state a fair and impartial trial on the facts allowed to be presented to them by the court by way of testimony and evidence, and thereafter, in arriving at a verdict, apply to the facts as they find them the law given to them by the court in the instructions, accepting those instructions as the law to be applied, whether they agree with them or not.

The court may permit the defendant or his attorney and the district attorney to examine the prospective jurors, or he may do it himself. NRS 175.031. Our law permits a challenge to prospective jurors for any cause or favor which would

prevent him from adjudging the facts fairly. NRS 175.036. Each party is also given the right to challenge a certain number of jurors peremptorily or without assigning any reason. NRS 175.051. The qualification and exemption from jury duty is also fixed by statute. NRS 6.010 and 6.020. A juror is precluded from revealing to his fellow jurors any fact relating to the case of his own knowledge, and if he has such knowledge must disclose such information to the judge out of the presence of the other jurors. NRS 175.121. The judge, upon the close of argument, may state the testimony and declare the law to the jurors, but he may not charge with respect to fact. The instructions must be in writing and may be given before or after argument of counsel. NRS 175.161.

This summary of statutory law fairly well states the procedure allowed in selecting and qualifying jurors, determining their fairness to serve, and instructions to them on law. Nowhere is it indicated that examination of prospective jurors on issues of law has anything to do with their ability to serve fairly. The limited inquiry that can or should be permitted to be made of them regarding the law is that, if selected, they will accept and apply the law given to them by the court in the instructions to the facts as they find them, and in doing so apply that law whether they otherwise disagree with it or even if it may be different from what they think the law is or ought to be. Indeed, counsel for appellant has not cited any authority requiring that he be allowed to interrogate on law, nor do we know of any such authority.

Except for stock instructions given in every criminal case, the facts determine what the instructions on law will be. Counsel should not be permitted to interrogate on issues of law which ultimately may not materialize because the proper facts have not been adduced in the evidence. He may find he has interrogated on issues that are not present at all in the trial. Moreover, the proper place in the trial to discuss the legal issues is during closing argument to the jury where counsel can again remind them of their sworn oath to follow the court's instructions on the law. At that point counsel has wide latitude and discretion in relating all instructions, stock and otherwise, to facts brought out in evidence.

The trial court not only may, but should, preclude counsel from interrogating on issues of law. See Stone v. United States,

324 F.2d 804 (5th Cir. 1963); Harrell v. Commonwealth, 328 S.W.2d 531 (Ky.App. 1959). The court should, in exercise of its sound discretion, allow considerable latitude to counsel in determining the disqualification or fairness of a juror in a challenge for disqualification, cause or favor, or to make an intelligent peremptory challenge. State v. McKeehan, 430 P.2d 886 (Idaho 1967); State v. Jordan, 320 P.2d 446 (Ariz. 1958), cert. denied 357 U.S. 922 (1958); State v. Tharp, 256 P.2d 482 (Wash. 1953); Kephart v. State, 229 P.2d 224 (Okla.App. 1951). However, the scope of that examination is within the sound discretion of the court. State v. McKeehan, supra; State v. Tharp, supra.

2. Consideration by the trial court in granting or denying a new trial has been clearly set down in several recent cases. Pacheco v. State, 81 Nev. 639, 408 P.2d 715 (1965); Burton v. State, 84 Nev. 191, 437 P.2d 861 (1968); State v. Crockett, 84 Nev. 516, 444 P.2d 896 (1968). The statute governing the granting of new trials was amended by the 1967 legislature and appears as NRS 176.515. Appellant contends, and we agree, that in seeking a new trial the newly-discovered evidence must be (1) newly discovered, (2) material to movant's defense, (3) such that it could not with reasonable diligence have been discovered and produced for the trial, (4) not cumulative, and (5) such as to render a different result probable upon retrial. To which we add (6) that it does not attempt only to contradict a former witness or to impeach or discredit him, unless witness impeached is so important that a different result must follow, Whise v. Whise, 36 Nev. 16, 131 P. 967 (1913); and (7) that these facts be shown by the best evidence the case admits, People v. Sutton, 15 P. 86 (Cal. 1887); People v. Beard, 294 P.2d 29 (Cal. 1956).

The evidence offered by appellant in behalf of his motion to gain a new trial fails to meet those requirements in several respects. The only new evidence offered is that Benson received the heroin an hour earlier from Johnnie Baxter. Baxter, in sworn testimony at the hearing on the motion, denied such action on his part. There is no showing that this evidence could not with reasonable diligence have been discovered and produced at the trial. Further, there was ample support for the trial court's finding in denying the motion that a different result was not probable on retrial.

Appellant also contends the testimony from Benson could not be effectively produced at the trial because of Benson's claim of incrimination and refusal to testify at appellant's trial upon the advice of counsel. Appellant capitulated to that claimed privilege of Benson without really making an effort to test the legal correctness of Benson's refusal to testify in court. Benson had already pleaded guilty to the same offense when he claimed the privilege, although he had not yet been sentenced. He contended his testimony on appellant's behalf would tend to incriminate him in his application for probation. At that point, Benson could have claimed no privilege and could have been forced to testify. Knox v. State, 198 A.2d 285 (Md. 1964); Commonwealth v. Tracey, 8 A.2d 622 (Pa. 1939); Namet v. United States, 373 U.S. 179 (1963); and see Anno. 9, A.L.R.3rd 990.

This case points up the caution we urged in Burton v. State, supra, in considering motions for new trials where a co-defendant or accomplice, after his own conviction attempts to exculpate another by accepting the responsibility for a common criminal act. Nor do we feel the rule in State v. Crockett, supra, applies in this case. In Crockett a newly-discovered witness implicated himself in a crime for which he had not yet been suspected. Here, Benson was known to appellant and his counsel as a possible witness shortly after his own arrest.

The conviction and denial of a new trial are both affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.