RONNIE G. MILLIGAN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 13839

TERRY CARL BONNETTE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 14530

KATHERINE L. ORFIELD, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 15002

PARIS LEON HALE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 15003

October 28, 1985                                      708 P.2d 289

[Rehearing denied April 3, 1986]

*John L. Conner,* Reno, for Appellant Milligan.

*Brian McKay,* Attorney General, *Brian Hutchins,* Deputy Attorney General, Carson City, for Respondent.

*Gary D. Woodbury,* Elko, for Appellant Bonnette.

*Brian McKay,* Attorney General, Carson City, *Virginia Shane,* District Attorney, *William C. Jeanney,* Deputy District Attorney, *O. Kent Maher,* Deputy District Attorney, Humboldt County, for Respondent.

*John McCormick,* Fallon, for Appellant Orfield.

*Brian McKay,* Attorney General, *Virginia Shane,* District Attorney, *O. Kent Maher,* Deputy District Attorney, Humboldt County, for Respondent.

*Donald K. Coppa,* Reno, for Appellant Hale.

*Brian McKay,* Attorney General, *Virginia Shane,* District Attorney, *O. Kent Maher,* Deputy District Attorney, Humboldt County, for Respondent.

# OPINION

*Per Curiam:*

Ronnie Milligan, Paris Leon Hale, Katherine Orfield and Terry Carl Bonnette stand convicted of participating in the robbery and

murder of Ms. Zolihan Voinski, a 77-year old woman. Milligan was found guilty of first degree murder and sentenced to die. Hale was convicted of first degree murder and robbery with the use of a deadly weapon upon the person of the age of 65 years or older. He was sentenced to life imprisonment with the possibility of parole, to run concurrently with a seven and one-half year term for robbery and consecutively with two additional seven and one-half years terms for use of a deadly weapon and for committing the crime on a person over the age of 65 years. Katherine Orfield was found guilty of second degree murder and robbery. She was given sentences of life imprisonment and fifteen years. Terry Bonnette was convicted of first degree murder and robbery with the use of a deadly weapon on a person over the age of 65 years. Bonnette was sentenced to life imprisonment without possibility of parole and to three consective five-year terms.

Because all of these appeals arise from the same set of operative facts and, further, because some of the legal issues involved are identical, we have chosen to consolidate them.

## The Facts

The state's chief witness at each of the appellants' trials was Ramon Houston, an illegal alien whom the appellants had picked up hitchhiking a few days before the murder. Houston was given complete immunity in exchange for his testimony.

Houston testified that on July 4, 1980, he had been traveling with the group for three or four days. They were headed west on Interstate 80 when they stopped at the Valmy rest area to have lunch.

While at the rest area the group met Zolihan Voinski. Ms. Voinski was driving a Volkswagon van which, for some unexplained reasons, was disabled at the rest area. Hale made an unsuccessful attempt to start the van for Ms. Voinski.

After some discussion, the entire group, including Ms. Voinski, climbed into Bonnette's car. With Bonnette driving, they proceeded west until they turned off the interstate. According to Houston, they turned on a dirt road and drove for a few minutes; then Bonnette stopped the car.

Hale got out of the back seat and pulled Ms. Voinski out of the car. While Hale repeatedly hit Ms. Voinski on the head with a screwdriver, Bonnette and Orfield tore her purse from her hands.

Houston testified that he stayed near the back of the car and was afraid to intercede on Ms. Voinski's behalf. As he turned away and then looked back, Houston saw Ms. Voinski lying on the ground and Milligan hitting her head with a sledgehammer.

When the assault abated, Milligan put the sledge hammer in the front seat of the car while Hale and Bonnette talked things over. The group, including Houston, got back in the car leaving

Ms. Voinski bleeding on the desert floor. As they left, Bonnette handed Ms. Voinski's money to Hale. Before reentering the interstate Orfield wiped the blood from the sledgehammer and gave it to Houston to throw into the desert. At the same time Houston hid Ms. Voinski's purse in a bush.

According to Houston, the group returned to the rest area where Hale and Milligan climbed into Ms. Voinski's van. Both vehicles headed west for a short while until they stopped so Bonnette could join Hale and Milligan in the van. They then proceeded on for some time until they met at a bar.

Once at the bar, Houston claimed that he had to use the restroom so he could get away from the group. Houston climbed out the restroom window and attracted the attention of someone who helped him contact law enforcement officers. Those officers eventually arrested the appellants.

Ms. Voinski was found in the desert and taken to a hospital where she remained in a coma until July 25, 1980, when she died.

## I.

### The Quantification of Reasonable Doubt

This assignment of error is dispositive of the Bonnette, Orfield and Hale cases. It is inapplicable to Milligan's appeal.

The laws of this state, as expressed both by statute and decisions of this court, forbid any attempt by a trial judge to define the concept of reasonable doubt in any manner other than that set out by the legislature in NRS 175.211. McCullough v. State, 99 Nev. 72, 657 P.2d 1157 (1983). Likewise, any attempt to quantify the degree of proof needed to establish a reasonable doubt is impermissible. As we held in *McCullough*: "The concept of reasonable doubt is inherently qualitative. Any attempt to quantify it may impermissibly lower the prosecutor's burden of proof, and is likely to confuse rather than clarify." 99 Nev. at 75, 657 P.2d at 1159.

In the instant cases the trial judge used various examples ranging from the amount of air in a balloon to a scale of one to ten, in efforts to quantify the concept of reasonable doubt. In addition to these comments the trial judge instructed the juries in language identical to that used in *McCullough,* above:

> It is not necessary that the defendant's guilt should be established beyond a reasonable doubt or to an absolute certainty, but instead thereof that the defendant's guilt must be established beyond a reasonable doubt as hereinafter defined.

While we have no doubt that the judge was trying to aid the

jury in understanding its role, his comments require us to reverse the convictions of Bonnette, Orfield and Hale and remand them for new trials. These cases are indistinguishable from *McCullough;* and, therefore, we have no choice other than to reverse the convictions.

## II.

### *Ronnie Milligan*

#### A.

#### *Whether Voir Dire Must Include a Definition of First Degree Murder*

Milligan asserts that the trial court erred because it did not *sua sponte* define first degree murder during *voir dire* for the veniremen. He argues that in order to determine if the prospective jurors were capable of following the law regarding the death penalty they must first have the elements of the crime defined for them.

In addressing this argument we first note that Milligan's attorney made no effort to define first degree murder for the prospective jurors. For that reason alone we need not address this alleged error. Snow v. State, 101 Nev. 439, 705 P.2d 632 (1985). Nevertheless, because this is a death penalty case and requires a heightened review, we turn to the merits of this claim.

Under Whitherspoon v. Illinois, 391 U.S. 510 (1968), *reh'g denied,* 393 U.S. 898 (1968), as further defined in Adams v. Texas, 448 U.S. 38 (1980), jurors whose views would "prevent or substantially impair" the performance of their duties as jurors in accordance with the instructions and juror's oath are not qualified to serve. The purpose of this rule is obvious: to ensure both the accused and the state a verdict founded on legal principles, not the individual ideologies of the jurors. We do not consider it necessary to the administration of this rule that the various elements of first degree murder be delineated for the jury. We reach this conclusion for several reasons.

First, we believe that the term "first degree murder" is such that the common understanding of the average juror would already include a knowledge of the term sufficient to respond accurately to *Adams* style *voir dire* questioning. Secondly, a *voir dire* definition of first degree murder could result in confusion of jurors who would be anticipating proof of various elements of the offense which are not applicable to the case. *See* Oliver v. State, 85 Nev. 418, 456 P.2d 431 (1969), wherein we held that the

appropriate points in a trial to discuss legal issues are during the instructions and closing arguments.

We see no merit to this assignment of error.

## B.

### The Failure of Milligan's Counsel to Challenge Selected Jurors

Milligan argues that his trial counsel was ineffective because of counsel's failure to challenge for cause three jurors who had rather strong opinions on the death penalty. Preferring an evidentiary hearing of the matter, we have traditionally refused to pass on questions of ineffective trial counsel on direct appeal except where counsel's actions are inconsistent with "even a modicum of effective advocacy." *See* Mazzan v. State, 100 Nev. 74, 675 P.2d 409 (1984).

The three jurors Milligan complains of indicated that they could be sympathetic to a claim of alcohol-induced diminished capacity, Milligan's only defense. Therefore a valid trial tactic might have been to include those veniremen as jurors. Without ruling out the possibility of a subsequent evidentiary hearing predicated on the appropriate motion, we decline to hold that Milligan's counsel was so ineffective as to rise to the level of that of *Mazzan.*

## C.

### The Scope of Voir Dire

During the *voir dire* Milligan's attorney asked a prospective juror whether she believed in the biblical expression of "an eye for an eye." The trial court sustained an objection to the question on grounds of relevancy. Milligan now asserts that ruling was error.

When attempting to empanel a jury in a capital murder trial a number of issues arise which are not relevant to any other form of litigation. Because a verdict of guilty leads to the ultimate question of whether the accused should be executed, a decision of paramount importance to the defendant, the personal beliefs and convictions of the members of the jury are highly relevant. A defendant is entitled to explore the prospective juror's values and personal convictions, including those reflected in or reflective of religious beliefs. We hold that the trial court erred when it ruled that the prospective juror's belief in the adage of "an eye for an eye" was irrelevant. Nevertheless, we further hold that under the

634

quidelines of Chapman v. California, 386 U.S. 18 (1967), *reh'g denied,* 386 U.S. 987 (1967), such error was harmless beyond a reasonable doubt as the prospective juror involved stated unequivocally that she could put aside any personal beliefs and follow the law as instructed by the judge.

## D.

### *The Admission of Certain Photographs*

Milligan argues that photographs of Ms. Voinski were improperly admitted and that they were more prejudicial than probative. The court has reviewed these photographs and finds that their admissibility was not an abuse of discretion. Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977).

## E.

### *The Failure to Administer a Blood-Alcohol Test to Milligan*

Here Milligan asserts that the state was responsible for the loss of valuable evidence (his level of intoxication) due to the failure of the police to administer a blood-alcohol test to him immediately following his arrest.

In Wood v. State, 97 Nev. 363, 632 P.2d 339 (1981), we held that in order for the loss or destruction of evidence to constitute the basis of a reversal the appellant must show either bad faith or connivance on the part of the government *or* prejudice resulting from the loss. In the instant appeal there is neither an allegation nor proof of bad faith or connivance. We must therefore determine whether Milligan has been prejudiced to a degree requiring reversal.

In order to justify a reversal the lost evidence must be reasonably anticipated to be both exculpatory and material to the appellant's defense. Boggs v. State, 95 Nev. 911, 604 P.2d 107 (1979). In *Boggs* we also held that "[i]t is not sufficient that the showing disclose merely a hoped-for conclusion from examination of the destroyed evidence, nor is it sufficient for the defendant to show only that examination of the evidence would be helpful in preparing his defense." 95 Nev. at 913, citing United States v. Agurs, 427 U.S. 97 (1976) and State v. Koennecke, 565 P.2d 376 (Or.App. 1977).

We fail to discern any prejudice to Milligan resulting from the failure to test his blood-alcohol content. The record indicates that he had continued to drink between the time of the murder and his

arrest. Therefore a blood-alcohol test would have been inconclusive as to his degree of intoxication at the time of the crime, several hours before the arrest. Also, Milligan was permitted to introduce other evidence regarding his intoxication, including the supplemental arrest report and Houston's testimony that before the killing Milligan had been drinking brandy and wine "fast and fast and fast."

This opinion should not be read to mean that law enforcement officers are under no circumstances required to use their own initiative in obtaining a blood-alcohol sample from a suspect. Where the crime and the arrest occur in a reasonable temporal proximity and where the police reasonably believe that the suspect has committted a crime, and it further appears that the suspect's cognitive capacity is impaired by alcohol, a test may be required. That not being the case here, we find no merit to this assignment of error.

## F.

### Instruction No. 6 in the Guilt Phase

Milligan argues that the trial court erred by granting Instruction No. 6 during the guilt phase of his trial. The part of the instruction with which Milligan takes exception reads:

If you believe that a witness willfully lied as to a material fact, you should distrust the rest of his testimony and you may, but are not obliged to, disregard all the testimony.

Milligan asserts that the instruction erroneously instructs the jury as to matters of fact in violation of the Nevada Consititution, article 6 section 2 and NRS 175.161(1).

We have noted initially that Milligan failed to object to the instruction at trial, nevertheless, we have considered the instruction and conclude that it was not error. When the instruction is read in its entirety, it is clear that the jury was properly instructed that it was the ultimate judge of the weight and worth of the evidence.

## G.

### Constitutionality of Nevada's Death Penalty

Milligan argues that Nevada's death penalty is violative of our state and federal constitutions. We have recently considered this argument and found it to have no merit. Nevius v. State, 101 Nev. 238, 699 P.2d 1053 (1985). That finding remains valid.

## H.

### Use of the Underlying Felony as an Aggravating Circumstance

The jury determined that the sole aggravating circumstance was as follows:

> That the murder was committed while the defendent was engaged, or was an accomplice,. in the commission of or an attempt to commit, or flight after committing or attempting to commit, robbery.

Milligan argues that the underlying felony; robbery, may not be used further as an aggravating circumstance. We discussed and dismissed this argument in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985).

## I.

### Instruction No. 1 During the Sentencing Hearing

Milligan asserts that the trial court erred by granting Instruction No. 1 during the sentencing phase of his trial. That instruction informed the jury that it "must not be swayed by any sentiment, sympathy, passion or prejudice for or against the defendant, or by any guesswork as to the facts."

Milligan argues that the jury may rightly consider sympathy for him during the penalty phase of the trial. We addressed a similar argument in *Nevius,* above, and rejected it. Milligan's jury was correctly instructed that it was possessed with the power of mercy. Also, the jury was properly instructed on its ability to consider any mitigating factors it found from the evidence. We therefore conclude that the granting of this instruction was not error.

## J.

### Use of Evidence Presented in the Guilt Phase at the Penalty Phase

The district judge instructed the jury that they could consider all of the evidence presented in the guilt phase of trial during their sentencing deliberations. We note that there was no objection to this instruction. That procedural defect notwithstanding, we also fail to see any error. By statute, questions of admissibility during the penalty phase of a capital murder trial are largely left to the discretion of the trial judge. NRS 175.552. We find no abuse of that discretion here.

## K.

### Penalty Phase Instruction No. 4

Milligan argues here that the trial court erred in granting Instruction No. 4 in the penalty phase.[1] Specifically, he argues that the instruction implies that death is the only sentence the jury can impose which might not ultimately be altered by either parole or pardon, thus tilting the jury toward the death sentence.

In *Petrocelli,* above, we expressly approved a similar instruction but with a critical distinction. Part four of the instruction approved in *Petrocelli* reads:

> 4. *Although under certain circumstances and conditions the State Board of Pardons has the power to modify sentences,* you are instructed that you may not speculate as to whether the sentence you impose may be changed at a later date.

(Emphasis added).

The distinction between the instruction given in the instant case and that suggested in *Petrocelli* is critical for it cures the defect now suggested by Milligan. An instruction such as the one given in this case should not be given.

▬▬▬ ▬

Nevertheless, a compelling reason prevents us from finding that the granting of Instruction No. 4 is reversible in this case: Milligan requested it. We therefore conclude that any error committed by giving the subject instruction was invited and cannot be asserted as grounds for reversal. State v. Fouquette, 67 Nev. 505, 221 P.2d 404 (1950).

## L.

### Penalty Phase Instruction No. 7

▬▬▬ ▬

Milligan complains that this instruction was inconsistent with other instructions on the burden of proof regarding aggravating

---

[1] Instruction No. 4.:

1. Life imprisonment with the possibility of parole means a sentence to life imprisonment which provides that the Defendant would be eligible for parole after a period of ten years. This does not mean that he would be paroled after ten years, but only that he would be eligible after that period of time.

2. Life imprisonment without the possibility of parole means exactly what it says, that the defendant shall not be eligible for parole.

3. If you sentence the Defendant to death you must assume that the sentence will be carried out.

4. You are instructed that you may not speculate as to whether your sentence may be changed at a later date.

and mitigating circumstances. As Milligan failed to object to the instruction at trial and on appeal concedes that any error was beneficial to him, we decline to find reversible error. State v. Fouquette, 67 Nev. 505, 221 P.2d 404 (1950).

## M.

### The Failure to Grant Instruction No. 1 and 2

During the penalty phase of trial, the defense requested two instructions limiting the nature of aggravating circumstances available for the jury's consideration. The trial judge refused these instructions on the ground that their content had already been covered in another instruction.

Review of the proffered instructions reveals that they correctly state the law; however, review of those instructions actually given the jury reveals that the trial court correctly found those refused to be cumulative. We have consistently held that a trial court need not grant cumulative instructions. Roland v. State, 96 Nev. 300, 608 P.2d 500 (1980); Beets v. State, 94 Nev. 89, 575 P.2d 591 (1978).

## N.

### The Order of Closing Argument

Milligan challenges the order of the penalty phase closing arguments in this assignment of error. Specifically, he asserts that he should have been allowed the "last word" at argument. As no request was made of the trial court for a change in the order of argument, we consider the issue waived.

## O.

### The Necessity of Post-Verdict Judicial Reports

Milligan argues that meaningful appellate review cannot be accomplished without a post-verdict report completed by the trial judge. Milligan asserts that such a report would allow this court to be apprised of relevant considerations not apparent in the record.

We are reluctant to impose such a duty on the district court judges. The benefits to be gained by this type of report do not justify either the time or expense it would require. This court carefully examines the record in the cases before it, giving particular attention to those involving the death penalty. Any error not apparent on the face of the record may still be brought to the court's attention through the appropriate writ. We therefore

conclude that a report such as that requested here is unnecessary for effective appellate review.

## P.

### Prosecutorial Misconduct

Milligan next complains of several incidents of what he terms prosecutorial misconduct, occurring either during *voir dire* or at closing argument. None of these incidents was objected to at trial and we are therefore not obliged to consider them. Mercado v. State, 100 Nev. 535, 688 P.2d 305 (1984). Nevertheless, consistent with the concept of heightened review of capital cases, we have examined the alleged errors and found no ground for reversal.

## Q.

### Proportional Review

We have reviewed our other cases in which the sentence of death has been imposed to determine whether Milligan's sentence is disproportionate or excessive. Our review leads us to conclude that the sentence of death is neither disproportionate nor excessive.

We also conclude from the record that the sentences of death were not imposed under the influence of passion, prejudice or any arbitrary factor.

## III.

The convictions of Terry Bonnette, Leon Paris Hale and Katherine Orfield[2] are hereby reversed. Those cases are remanded to the district court for further proceedings consistent with this opinion. Hale's motion for argument is dismissed as moot.

The conviction and sentence of death of Ronnie Milligan is hereby affirmed.[3]

SPRINGER, C. J., and MOWBRAY, GUNDERSON, and STEFFEN, JJ., and ZENOFF, SR. J., concur.

---

[2]The HONORABLE DAVID ZENOFF, Senior Justice, was designated by the Chief Justice to participate in Orfield v. State, No. 15002. Nev. Const., art. 6, § 19; SCR 10.

[3]The HONORABLE CLIFF YOUNG, Justice, did not participate in the consideration of these appeals.