[No. 3516–II.   Division Two.   August 6, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES EVERETT HAWKINS, *Appellant.*

*Dan Austad,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* for respondent.

PETRICH, J.—Charles E. Hawkins has appealed his conviction for first degree robbery. The primary issue on appeal is the meaning of "custodial interrogation" for purposes of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). We hold that custodial statements of the defendant were introduced at trial in violation of *Miranda* and reverse the conviction.

Defendant's conviction arose from the following factual setting. On the afternoon of February 23, 1978, two men later identified as defendant and Jonathon Thomes knocked at the door of an apartment occupied by Anthony Vasquez and Jose Ralat. Vasquez allowed them to enter as he and Ralat were acquainted with the two men. Both had been at the apartment several days earlier after meeting

the occupants at a tavern. At this time the four men had drunk beer and smoked marijuana, and Ralat had stated that he was to be discharged from the Navy shortly. Upon entry of the apartment on February 23, one of the robbers threatened to kill Vasquez and demanded money. Vasquez replied that there was money under a mattress. The robbers located the money and tied up Ralat. At this point Ralat escaped by jumping out of a window, and the two robbers fled with over $800.

Witnesses outside the apartment building saw the two robbers flee and saw at least one escape in a blue Toyota. After their initial contact with police, neither Ralat nor Vasquez told police that they knew the identity of the robbers. Later in the police investigation, however, they both identified defendant out of a photo montage. Both victims indicated at trial that they had known defendant's identity earlier in the investigation. Thomes was eventually arrested after the getaway vehicle was traced to him. Defendant, however, was not apprehended until much later.

On March 6, 1978, defendant came to the police station in Oakland, California, and told Officer Mahaney, the officer in charge of the fugitive detail, that he was wanted for robbery in Bremerton and wished to surrender himself. Officer Mahaney took defendant's name and date of birth and verified that there was an outstanding warrant for his arrest. Officer Mahaney then patted defendant down for weapons and began to fill out an arrest report. In order to complete the report, the officer asked defendant his height, weight and other physical characteristics and explained the extradition proceedings. He stated that, contrary to what defendant might have seen on television or otherwise think, it was not the policy of the Oakland Police Department to advise fugitives of their *Miranda* rights since Oakland police officers would not take part in the investigation and prosecution of the underlying crime, but were only assisting in the extradition process. He added further that his department usually received more cooperation from fugi-

tives when *Miranda* warnings were not given. At this point defendant began to talk about the robbery. He stated that he and another man had robbed two drug dealers in Bremerton who would probably not report the robbery to the police. Defendant stated further that he became frightened when the other robber wanted to kill the victims, that he argued with the second robber and then fled. Officer Mahaney testified to this statement at trial over defense counsel's objections.

After hearing testimony from the robbery victims and other witnesses including Officer Mahaney, the jury found defendant guilty of two counts of first degree robbery. It also entered special verdicts that he was armed with a firearm and a deadly weapon. Defendant appeals.

■ The primary issue on appeal is whether defendant's statements to Officer Mahaney were the product of "custodial interrogation" for purposes of *Miranda*. At the conclusion of the CrR 3.5 hearing the trial court found defendant's statements to Officer Mahaney admissible on the basis that they were voluntary.[1] The rule of *Miranda* requires that warnings must be given before an individual is subjected to custodial interrogation, defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in a significant manner. *E.g., State v. Boggs,* 16 Wn. App. 682, 685, 559 P.2d 11 (1977). *See also State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976). The State argues that, since defendant entered the Oakland police station on his own volition and volunteered the information about the robbery to Officer Mahaney, *Miranda* warnings need not be

---

[1]The 3.5 hearing concerning defendant's statements took place on April 21, 1978, and trial began on April 24, 1978. However, the findings and conclusions of law in the 3.5 hearing were not entered until May 30, 1978, more than 1 month after the trial concluded. CrR 3.5(c) requires that the court shall set forth in writing facts and conclusions concerning whether defendant's statements are admissible "[a]fter the hearing." Although the rule by its terms does not specify that the facts and conclusions of the statements' admissibility be reduced to writing before trial, the better practice would be to enter them prior to admitting the statements at trial.

given for defendant's statements to be admissible. In support it cites *Oregon v. Mathiason,* 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977) and *State v. Falk,* 17 Wn. App. 905, 567 P.2d 235 (1977), which held that information volunteered to police by a person not yet in police custody is admissible in the absence of *Miranda* warnings.

In both *Mathiason* and *Falk,* however, the defendant's freedom of movement was not restricted when the statements were made, and the court found specifically that the defendants were not in police custody at the critical times. In the present case, Officer Mahaney testified that defendant was not free to leave the police station after police received confirmation of the outstanding fugitive warrant. Therefore, defendant was clearly in police custody when the statements were made. The only remaining question is whether or not the statements were made in response to police "interrogation."

■ The United States Supreme Court has recently set forth a test to determine whether statements made by defendants while in custody are the product of police interrogation. In *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), the court held that the term "interrogation" under *Miranda* refers to express questioning of the suspect by police *or* to its "functional equivalent." The functional equivalent of express police questioning was further defined by the court as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnote omitted.) *Rhode Island v. Innis, supra* at 301. The court continued to note that, since police cannot be held accountable for unforeseeable results of their words or actions, "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis, supra* at 302.

When the rule of *Innis* is applied to the present case, we must conclude that, although defendant did not make the inculpatory statements in response to express interrogation, he did make them in response to the functional equivalent of express questioning. Officer Mahaney's statement to defendant that it was not the policy of the Oakland Police Department to give *Miranda* warnings in extradition proceedings may have been appropriate since *Miranda* does not apply to extradition proceedings in the asylum state. *United States ex rel. Vitiello v. Flood,* 374 F.2d 554, 557 (2d Cir. 1967). However, when Officer Mahaney told defendant that the Oakland Police Department would take no part in the investigation and eventual prosecution of the underlying crime of robbery in the demanding state, this deceptive, and as it turned out, false statement had the effect of causing defendant to believe that he could talk freely about the circumstances surrounding the robbery without fear that these statements would be later used against him at trial. In these circumstances, we hold that a police officer should have known that such deceptive statements made to defendant were reasonably likely to elicit an incriminating response.[2] As such, they were the functional equivalent to express questioning, and we must conclude that defendant made his statements as a result of custodial interrogation.

■ Since defendant's statements were made in response to custodial interrogation without benefit of *Miranda*

---

[2]At the 3.5 hearing Officer Mahaney testified that one in three persons arrested on fugitive warrants discussed the details of the crimes; on one prior occasion he was called as a witness to relate the accused's statements. In his brief defendant argues that the statements of Officer Mahaney amounted to cajolery. In *State v. Davis,* 73 Wn.2d 271, 282, 438 P.2d 185 (1968), cajolery was defined as a deliberate attempt to persuade or deceive the accused with false promises or inducements to relinquish his rights and respond to police questioning. *Accord, State v. Gilcrist,* 91 Wn.2d 603, 607, 590 P.2d 809 (1979). Although Officer Mahaney's statements to defendant were misleading, there is no evidence that they were made with the intent to deceive or deliberately induce defendant to relinquish his constitutional rights.

warnings, they cannot, therefore, be admissible. As the Supreme Court summarized its holding in *Miranda*:

> Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self–incrimination.

*Miranda v. Arizona,* 384 U.S. at 444. *See also State v. Miner,* 22 Wn. App. 480, 482, 591 P.2d 812 (1979) (holding that *Miranda* does not apply to statements of the defendant which are voluntary and unsolicited *and* not the product of custodial interrogation). The State's argument that defendant's statements were voluntary because he came to the police station and talked about the robbery in the absence of express police questioning about it, is not ultimately conclusive of whether the statements are admissible. Defendant's actions in coming to the police station on his own volition may have demonstrated that he wished to turn himself in and return to Washington to stand trial or otherwise resolve his responsibility for the underlying crime. His actions do not necessarily indicate that he wished to confess to the robbery and relinquish his constitutional rights. We hold, therefore, that the trial court erred in finding defendant's statements to Officer Mahaney to be voluntary and admissible. We now turn to whether or not the admission of this evidence was harmless error.

■ Error of constitutional magnitude is deemed harmless if the appellate court is able to say beyond a reasonable doubt that the error was harmless. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Stephens,* 93 Wn.2d 186, 191, 607 P.2d 304 (1980); *State v. Vargas,* 25 Wn. App. 809, 814, 610 P.2d 1 (1980). In order to support a conclusion that constitutional error is harmless, the record must contain strong independent and untainted evidence of guilt which leads to the conclusion that the constitutional error did not affect

the outcome of the trial. *State v. Stephens, supra; State v. Vargas, supra.* The State argues that, even if Officer Mahaney's evidence is excluded, overwhelming evidence of guilt exists from the testimony of the two victims. It also points out that defendant did not put on a defense other than an attempt to impeach the testimony of Ralat and Vasquez. We disagree and hold that the constitutional error in the present case was not harmless.

Both victims did testify that defendant was one of the robbers. However, in view of the inconsistencies surrounding their identification of defendant, we are unable to conclude that their testimony establishes defendant's guilt and thereby hold the admission of defendant's custodial statements to be harmless. At trial both Vasquez and Ralat testified that they immediately recognized both robbers when they entered the apartment on February 23 because they had met them at a tavern several days earlier and had returned with them to the apartment. However, neither victim gave this information to the police officers who arrived at the scene to investigate the robbery. Vasquez further testified that early in the morning of February 24 two men whom he presumed to be the robbers returned and attempted to break into the apartment. Although he testified that he knew their identity at this time, Vasquez did not give this information to police when they responded to his call. It was not until February 27, several days after the robbery, that the victims identified photographs of Jonathon Thomes and the defendant, although their testimony at trial indicates they had known their identity throughout the investigation. Vasquez attempted to explain this inconsistency by stating that he did not want police to know that he and Ralat had smoked marijuana with the defendant and Thomes several days before the robbery.

We cannot hold beyond a reasonable doubt that the testimony of these witnesses provides overwhelming evidence of defendant's guilt, and that admission of defendant's custodial statements in no way affected the outcome of the case. On appeal we may not substitute our judgment for

that of the jury and determine the testimony of the two victims to be credible without the additional testimony of Officer Mahaney which proved very damaging to the defendant.

Defendant's conviction is reversed and remanded with direction that defendant be given a new trial.

REED, C.J., and PETRIE, J., concur.