STATE of Maine

v.

**Lawrence J. FURROW.**

Supreme Judicial Court of Maine.

Argued Nov. 18, 1980.
Decided Jan. 7, 1981.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, William Darrow (orally), Law Student Intern, for plaintiff.

Juskewitch & Hunter, Steven A. Juskewitch, Portland (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Defendant Lawrence J. Furrow appeals from his Superior Court (Cumberland County) convictions, entered after trial by jury,

for burglary, 17–A M.R.S.A. § 401 (Supp. 1980), gross sexual misconduct, *id.* § 253(1)(A), and criminal threatening with a dangerous weapon, *id.* §§ 209, 1252(4). We find no reversible error in the trial leading to defendant's convictions, and we accordingly deny his appeal.

■ At his trial, Furrow insisted on representing himself. Before the Law Court an attorney appears for him and asserts four separate grounds for appeal. However, none of those alleged errors were called to the attention of the trial court; and therefore we can review defendant's belated claims only under the "obvious error" standard. M.R.Crim.P. 52(b); *State v. DiPietro*, Me., 420 A.2d 1233, 1235 (1980). Defendant's self-representation at trial does not protect him from the consequences of the established principles of appellate review. A defendant who insists on proceeding without counsel is not excused from complying with procedural rules. *See Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975).

All three charges on which Furrow was convicted arose out of a single incident that occurred in Portland in the early morning hours of November 13, 1979. Three persons witnessed one or more of the crimes; namely, the victim of the gross sexual misconduct, her husband, and their 12-year-old granddaughter. At a lineup and voice identification procedure conducted by the Portland police eight days later, all three identified Furrow as the perpetrator of the crimes, but only the granddaughter could make that identification on the basis of both Furrow's appearance and the sound of his voice. The perpetrator blindfolded the other two witnesses before they had the opportunity to see him, and thus they identified defendant only by the sound of his voice.

On appeal defendant first claims that admission of the chief victim's identification testimony was improper because the District Attorney's office failed automatically to provide him prior to trial, in accordance with M.R.Crim.P. 16(a), a copy of her statement, made shortly after she had identified defendant at the November 21 voice identification. While Rule 16(a) does not require that the accused be furnished with a verbatim copy of statements made to investigative authorities by witnesses who will later testify at trial, it does provide that the prosecutor shall furnish a defendant, within a reasonable time, a description of testimony intended to be used against him and relating to a lineup or voice identification of the defendant. The attorney for the State conceded at oral argument that defendant was never supplied with a description of the statement in question and that this omission constituted a violation of Rule 16(a)(1)(A)(iii).[1] We must thus determine whether the admission of the prosecutrix's identification testimony following the State's conceded discovery violation constitutes obvious error requiring reversal of his convictions.

■ We find no obvious error in admitting the testimony of that one identification witness. Even if its admission were error—a question we need not and do not decide—that error would not require reversal of defendant's convictions. The voice identification in question was essentially cumulative. *See State v. Flash*, Me., 418 A.2d 158, 162 (1980). Even though that identification came from the principal victim of the criminal activity and thus may have had more impact on the jury than either the voice identification by her husband or even the visual identification by her granddaughter, the jury could not have entertained any reasonable doubt that defendant had been identified as the perpetrator, even without the prosecutrix's testimo-

1. M.R.Crim.P. 16(a) provides in pertinent part as follows:

   (a) **Automatic Discovery.**
   (1) *Duty of the Attorney for the State.* The attorney for the State shall furnish to the defendant within a reasonable time:

   (A) A statement describing any testimony or other evidence intended to be used against the defendant which:

   (iii) Relates to a lineup, showup, picture, or voice identification of the defendant ....

ny. The jury observed defendant, representing himself at trial, repeatedly ask the prosecutrix's granddaughter on cross-examination if she had identified him at the lineup, to which she confidently answered in the affirmative, and likewise heard the husband testify, again under cross-examination by defendant himself, that he recognized defendant as the perpetrator by his voice. Particularly under the obvious error standard, the State's failure to disclose the prosecutrix's post-voice-identification statement to defendant did not make the admission at trial of her testimony relating to her identification of defendant grounds for reversal.[2]

▮▮▮ Defendant's second claim relates to the police identification procedure, which was conducted prior to either his indictment or arrest. He asserts that he was entitled to the presence of counsel when the police conducted the voice identification procedure, that both that procedure and the line-up were carried out in an improperly suggestive manner, and that the in-court identifications were not independently reliable. We reject that claim. Defendant was not entitled to the presence of counsel while the voice identification procedure was being conducted. The United States Supreme Court has held in *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972), that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." Defendant has been unable to suggest any reason why this court should make a pre-indictment voice identification procedure an exception to that rule.[3] There is, moreover, nothing in the record to support any assertion that either the lineup or the voice identification procedure was conducted in an unnecessarily suggestive manner.[4] We thus do not need to reach the

---

**2.** Even if the trial justice had been called upon to exercise the discretion given him by M.R. Crim.P. 16(d) to impose "appropriate" sanctions on the State for its failure to make available before trial any description of the prosecutrix's post-voice-identification statement, it is not at all apparent on the facts of this case that he would have found exclusion of her testimony relating to her voice identification of defendant to be the "appropriate" sanction in this case. Rule 16(d) provides for a spectrum of possible sanctions for discovery violations by the State, ranging from enforced compliance with the other provisions of Rule 16 to dismissal of the charges with prejudice. The "appropriate" sanction might well have been less stringent than exclusion of the prosecutrix's identification testimony; it might even have been to do nothing at all. *See State v. Bishop*, Me., 392 A.2d 20, 26 (1978).

We, however, reiterate our concern with this additional instance of a violation of the criminal discovery rules by the District Attorney's office that prosecuted the case at bar. *See State v. Thurlow*, Me., 414 A.2d 1241 (1980); *State v. Eldridge*, Me., 412 A.2d 62 (1980). Although there is some indication in the record that the assistant district attorney who tried this case was not personally aware that the information here in question had not been furnished to defendant before trial, and even though we conclude that this defendant was not prejudiced by the admission at trial of the prosecutrix's identification testimony, we again warn that violation of Rule 16 in the future may require the imposition of sanctions, including, under the proper circumstances, dismissal.

**3.** Defendant urges that the failure of the State to preserve a sound recording of the voice exemplar undermines this court's ability to review that portion of the police identification procedure for fairness and that as an alternative means of protecting defendant's rights, counsel should have been provided for him at the time the voice identification was made. Even assuming, however, the ready availability of a reliable method of capturing the voice exemplar, *State v. Colby*, Me., 361 A.2d 256 (1976) (photographic array was dismantled before trial), makes it clear that even when preservation of a record of a police identification procedure would be easy but is not done, testimony of the officials who conducted the identification procedure and of the witnesses who observed it is sufficient to allow the court to appraise the procedure. In this case, there was ample testimony demonstrating the reliability of the voice identification.

**4.** Defendant's claim that the lineup was unnecessarily suggestive is not assisted by the fact that none of the participants in the lineup had moustaches and that none thus precisely matched the description of the perpetrator given to the police by the prosecutrix's granddaughter. It is a matter of common knowledge that facial hair can be grown in a few days and removed in a few minutes. *See State v. Rowe*, Me., 314 A.2d 407, 410·11 (1974) (defendant with long, bushy, unruly hair and moustache

question of the independent reliability of the witnesses' in-court identifications. *See State v. Baker*, Me., 423 A.2d 227 at 229–230 (1980); *State v. Cefalo*, Me., 396 A.2d 233, 236 (1979); *State v. St. Onge*, Me., 392 A.2d 47, 50 (1978).

Defendant's final two claims are that the trial justice's failure to raise, on his own, a question as to defendant's competence to stand trial constituted an abuse of discretion and that the justice further erred in permitting defendant's court-appointed attorney to sit at counsel table during trial after having granted defendant's motion to conduct his own defense. We find no merit in either contention.

The conviction of a person when he is incompetent to stand trial violates the most basic principles of due process. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Thursby v. State*, Me., 223 A.2d 61, 66 (1966). The standard for determining an accused's competence at the time of trial is whether he is "capable of understanding the nature and object of the charges and proceedings against him, of comprehending his own condition in reference thereto, and of conducting . . . his defense in a rational and reasonable manner." *State v. Vane*, Me., 322 A.2d 58, 61 (1974), *citing and quoting Thursby v. State, supra* at 66. *See also Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

There is nothing in the record to indicate that the justice was ever put on notice by observation, reasonable claim, or credible source that defendant was incompetent to stand trial. *See Thursby v. State, supra* at 68. On the contrary, the justice had ample opportunity to evaluate defendant's competence to stand trial in considering and granting his motion to conduct his own defense at that trial. It is difficult to imagine that the justice could have found

that defendant possessed the ability to proceed *pro se* without implicitly determining that he was competent to stand trial as the accused. Defendant's attorney on appeal appears to argue in effect that a question of a defendant's competence to stand trial automatically arises whenever at trial he insists on defending himself against a serious criminal charge without counsel. We cannot accept this argument as a proposition of general application, for it would swallow up the constitutional right of any defendant to proceed *pro se*. Nor can we accept it as applied to the circumstances of the present case, where the trial court specifically addressed defendant's ability to defend himself and then observed his performance during the trial. The justice committed no error in not explicitly inquiring into defendant's competence to stand trial. *See State v. Vane, supra* at 62.

Finally, we reject defendant's contention that he was prejudiced by the presence of a court-appointed attorney at his counsel table during trial. In the very case in which it first recognized that the Sixth Amendment to the United States Constitution prevents a state from forcing a criminal defendant to accept representation by legal counsel, *Faretta v. California, supra*, the United States Supreme Court also declared that an accused's right to represent himself is not limitless. In *Faretta*, the Supreme Court expressly stated that, a defendant's constitutional right to self-representation notwithstanding, a trial court might, even over the objection of the accused, require the presence at trial of "standby counsel" to aid the accused in the event he requested assistance. 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. In the case at bar, the justice carefully explained to the jury the reasons for counsel's nonparticipation in the trial. The justice handled the matter in the only way it could be handled for the protection of defendant himself.

had moustache removed and was given a crewcut on afternoon of crime); *United States v. Clark*, 346 F.Supp. 428, 431 n. 4 (E.D.Pa.1972); *aff'd mem.* 475 F.2d 1396 (3d Cir. 1973). The cautionary instruction given in advance by the police to the three witnesses who observed the

lineup, to the effect that the perpetrator could have changed his appearance since the time of the crime, did no more than call their attention to the obvious. In no way did those instructions tend to single defendant out as the perpetrator.

The entry must be:

Appeal denied.

Judgment affirmed.

All concurring.