[No. 4096–II. Division Two. March 6, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. WELFORD COLES, *Appellant*.

*John L. Farra,* for appellant.

*Curtis M. Janhunen, Prosecuting Attorney,* for respondent.

PETRICH, J.—Welford Coles has appealed his conviction for second degree murder. The issues raised on appeal concern whether custodial statements made by defendant to law enforcement officers after he asserted his right to remain silent were admissible at trial, and whether cross-examination of the defendant by the prosecuting attorney and the prosecuting attorney's statements during closing argument amounted to prosecutorial misconduct. We hold that defendant's custodial statements were improperly admitted at trial and reverse.

In the evening hours of September 18, 1978, railroad

employees discovered a burned body, later identified as that of Carl Smith, in a boxcar located in the Aberdeen railroad yard. Railroad employees and other witnesses told police that Smith, a hobo who camped in the yard, had been seen for several days prior to the discovery of his body in the company of another hobo, later identified as defendant.

A warrant was issued for defendant's arrest, and he was eventually apprehended in Montana. Two Aberdeen police officers, Detective McManus and Officer Pierson, went to Montana to question defendant and bring him back to Grays Harbor County. Upon arrival in Montana, the officers told defendant the purpose of their questioning and advised him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Defendant stated that he understood his rights, that he did not want to talk to police and would not "do their job for them." However, defendant began to talk on his own volition about various Aberdeen police officers whom he knew, and the conversation later turned to religion, politics and police work in general.

In the course of this conversation defendant stated that he blamed the world's troubles on the "no–good Catholics and Lutherans." Detective McManus, without another repetition of *Miranda* warnings, brought the conversation back to the decedent and asked defendant if he knew Smith. Defendant replied that he did not and then said that Smith was a "no–good Lutheran." He went on to say that Smith probably "deserved to die" because he was "no good." The officers showed defendant a photo of Smith's face and asked how he died. Defendant replied that Smith was clumsy and probably fell and was run over by a train. Defendant then said that this could not have happened because Smith's body was found inside a boxcar. At this point police had not told defendant where the body was found, and the location of the body was not evident from the photograph. Before the hour and one–half conversation ended, defendant admitted that he knew Smith and signed

a form stating that he understood his rights. However, defendant refused to sign the complete waiver at the bottom of the form. After an omnibus hearing was held, the trial court concluded that the defendant's custodial statements were admissible because they were made voluntarily. The officers later testified to these inculpatory statements.

At trial the State's case consisted of a series of witnesses who provided a network of circumstantial evidence linking defendant and Smith during the period up to the murder. No eyewitness accounts were presented by the State showing defendant to be the murderer. Defendant testified in his own behalf and denied that he had killed Smith. During an intensive cross-examination, defendant continually argued and sparred with the prosecutor. As part of his cross-examination, the prosecutor questioned defendant about the details of his prior criminal convictions and other incidents of misconduct, and during closing argument referred to defendant's prior convictions as part of the pattern of circumstantial evidence pointing to defendant's guilt. Defense counsel did not request a cautionary instruction concerning the use of the prior convictions and replied in response to questioning by the trial court that he would not request such an instruction. The jury returned a verdict of guilty. Following entry of the verdict, defense counsel made a motion for new trial which was denied.

We first address whether the trial court erred in concluding that defendant's custodial statements were voluntary and therefore admissible. At the conclusion of the CrR 3.5 hearing the trial court made, in part, the following finding of fact and conclusion of law:

> The defendant initiated conversation with the officers and invited the officers to converse with him.
> Based upon the foregoing findings, the court concludes as a matter of law that the statements were made voluntarily, after proper admonishments of constitutional rights which were understood by the defendant, and are admissible at the trial of the defendant.

The State argues that the trial court correctly held defend-

ant's statements to be "voluntary" and admissible. We disagree.

██ It is undisputed that defendant was in custody when the inculpatory statements were made, and that he made these statements after *Miranda* rights were given and after he asserted his right to remain silent. Since the statements were the product of custodial interrogation, the State must demonstrate that *Miranda* warnings were given or that defendant clearly waived his right to remain silent before the statements may be admitted. The bare conclusion made by the trial court in the present case that the statements were "voluntary" and admissible based upon a finding that defendant initiated the conversation, without showing a valid waiver, is not ultimately conclusive of whether the statements are admissible. *See State v. Hawkins,* 27 Wn. App. 78, 84, 615 P.2d 1327 (1980). We cannot infer a waiver by the fact that defendant continued to answer police questioning after asserting his right to remain silent. *State v. Marcum,* 24 Wn. App. 441, 446, 601 P.2d 975 (1979). In any case, we are not bound by the trial court's findings following a suppression hearing on an issue of constitutional magnitude, *e.g., State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980); *State v. Agee,* 89 Wn.2d 416, 419, 573 P.2d 355 (1977), and are required to make our own independent assessment of the record to determine if defendant did in fact waive his rights.

██ A waiver of *Miranda* rights need not be explicit but may be inferred from particular facts and circumstances. *North Carolina v. Butler,* 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979). A waiver may be found when defendant freely and selectively responds to police questioning after initially asserting *Miranda* rights. *See, e.g., State v. Young,* 89 Wn.2d 613, 619–20, 574 P.2d 1171 (1978). However, the burden is upon the State to show an intelligent and voluntary waiver by a preponderance of the evidence. *E.g., State v. Gross,* 23 Wn. App. 319, 597 P.2d 894 (1979). Once a defendant asserts his right to remain silent, this must be scrupulously honored, and all interro-

gation must cease. *Michigan v. Mosley,* 423 U.S. 96, 104, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975); *State v. Chapman,* 84 Wn.2d 373, 376–77, 526 P.2d 64 (1974); *State v. Haynes,* 16 Wn. App. 778, 786, 559 P.2d 583 (1977). *See also State v. Boggs,* 16 Wn. App. 682, 688, 559 P.2d 11 (1977). Statements made by a defendant after "custodial interrogation" is continued or resumed in the absence of new warnings may not be admissible as voluntary and may not form the basis for a waiver. *Michigan v. Mosley, supra* at 106; *State v. Haynes, supra. See also State v. Pierce,* 94 Wn.2d 345, 352, 618 P.2d 62 (1980).

In the present case we cannot conclude that the State carried its burden to show that police scrupulously honored defendant's assertion of *Miranda* rights and did not resume interrogation, so that a finding of waiver can be inferred.[1] The State argues that the defendant himself resumed the conversation by asking questions about Aberdeen police after asserting initially that he would not talk about the incident under investigation. This ignores the fact that the officers subsequently turned the conversation back to the victim without again giving *Miranda* warnings. Under these circumstances, it must be concluded that by their continued questioning of defendant the officers had reason to believe he would make incriminating responses. As such, their interrogation of defendant continued. *See State v. Hawkins, supra* at 82 (defining "custodial interrogation" and citing *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980)). Since the police officers continued their interrogation after defendant stated that he did not

---

[1] We note that the Supreme Court has recently held that the trial court must now make four specific findings before custodial statements made after an assertion of *Miranda* rights are held admissible as a voluntary waiver of such rights: (1) that the right to cut off questioning was scrupulously honored; (2) that police engaged in no further "interrogation," defined in *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980) (words or actions by police reasonably likely to elicit an incriminating response) after defendant asserted his rights; (3) that police did not engage in tactics to coerce defendant into changing his mind; and (4) that the subsequent waiver was knowing and voluntary. *State v. Pierce,* 94 Wn.2d 345, 618 P.2d 62 (1980).

wish to talk, the defendant's right to cut off questioning was not scrupulously honored. Therefore, he cannot be deemed to have waived his rights, and his subsequent statements are not admissible.

██ We hold further that the admission of defendant's custodial statements was not harmless error. In view of the fact that the State's case consisted solely of circumstantial evidence, we cannot conclude that the record contains other independent and overwhelming evidence of guilt. *E.g.,* *State v. Hawkins, supra* at 84 (citing *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967)). Therefore, the admission of defendant's custodial statements must be held to be reversible error.

We now address whether or not the actions of the prosecutor during cross–examination of defendant and during closing argument rose to the level of prosecutorial misconduct. On direct examination defendant admitted that he had two prior convictions for second degree assault. During cross–examination the prosecuting attorney asked defendant questions concerning specific details of the two prior assaults:

Q [The Prosecutor] Well, didn't you hear something about a Gunboat Smith?
A You bet I did.
Q What about that?
A Well, him and that Rusty Godner (phonetic spelling), the same guy that I got two years probation over, got my wife drunk, and I suspect some chlorohydrate—that's knockout drops—wine, and had her up in a hotel room bareass naked.
Q And what did you do about it?
A I didn't do anything for some time.
Q And then?
A And then I worked old Gunboat Smith over in the back end of Jake's place, and an old logging buddy of mine went in and took her out of there and took her to his place.
Q How many years ago was this?
A That's been probably seven, eight years ago.

Q How about Godner?

A Godner was with him. Godner attacked me about four different times. I wasn't going to do anything to him and he hit me between the eyes with one of those meat tenderizer hammers up at Swede Nordstrom's apartment one night, and I just had a bellyful of him, so I worked him over a little bit and put him in the hospital for five days.

Q What did you work him over with?

A My fists. I was fully capable of doing that, you know, under the circumstances.

Q How about Montana?

A I got in a beef with a good old buddy of mine up there and I strongly suspect we got some doped up booze.

Q What happened?

[Defense counsel]: Your Honor, I don't think this is proper cross–examination.

THE COURT: Sustained.

After defense counsel made objections to this line of questioning and was sustained by the trial court, the prosecutor continued to encourage defendant to discuss the details of his prior convictions:

Q Do you ever have lapses of memory, Mr. Coles?

A No, sir.

Q Remember everything?

A No, I don't remember everything and I'm sure that you don't either.

Q Do you remember what you did to Carl Godner?

A Sure. I worked him over with my fists a little bit.

Q How about with a meat tenderizer?

[Defense counsel]: Your Honor, I'm going to object again. I think this is improper cross–examination.

THE COURT: Objection sustained.

In the course of his cross–examination the prosecutor also referred to specific acts of misconduct which had not been reduced to convictions, namely that defendant had stolen a bottle of wine from a store and was involved in a fight in a local hotel. In addition, throughout this cross–examination the prosecutor made repeated references to defendant's unorthodox political and religious beliefs in an obvious attempt to encourage defendant to make comments

which would discredit him in front of the jury on matters irrelevant to the facts of the case.[2] Finally, in his closing argument the prosecutor again referred to the details of defendant's prior convictions as part of his summation of the circumstantial evidence pointing to defendant's guilt:

> The evidence in this case is that of a puzzle. Each piece in itself may not lead to a verdict. But when you put all the pieces in there, taking into account that nobody else was involved, nobody else was in the yard.
> . . .
> *Is it like the pearl in the oyster that we tabbed the person who had, quite coincidentally, been convicted of two felony assaults for rearranging people's faces?*

(Italics ours.)

Defendant argues that the totality of this cross–examination and summation amounted to deliberate prosecutorial misconduct which denied him a fair trial. We agree that prosecutorial misconduct occurred but decline to reverse on

---

[2]The following excerpts from the record exemplify this line of questioning:

Q [The Prosecutor] Are you a citizen of Russia?

A No, but I'd sure like to be rather than this country.

Q You ever try to become a citizen of Russia?

A No, I have never been there or made application through the embassy.

Q How about through a court?

A I haven't tried it that way, I don't know how you'd go about it. But this country, I renounced my citizenship in this country three different times in court and once was in front of Judge Kirkwood recently, and for very good reasons, and I'd like to go into that if you'd care to.

Q Go ahead.

A Take about six months to tell you the whole story, you and any law enforcement officials in this country—

 [Defense counsel]: Objection.

 THE COURT: Objection sustained.

. . .

Q You're an atheist?

A You bet I am.

Q I thought you just took an oath.

A That don't make any difference. I didn't say God, the Judge did. Are you so childish that you believe in God and Jesus Christ and the seven disciples and heaven and earth and eternity and all that sort of thing?

Q You don't?

A No, I definitely do not. . . .

Q Taking an oath means nothing to you?

this basis.

 Evidence of the prior criminal convictions of a witness is admissible for the limited purpose of attacking the witness' credibility.[3] RCW 10.52.030. *See State v. Russell,* 62 Wn.2d 635, 637–38, 384 P.2d 334 (1963). *See also State v. Mack,* 80 Wn.2d 19, 23, 490 P.2d 1303 (1971); *State v. Emmanuel,* 42 Wn.2d 1, 13, 253 P.2d 386 (1953). The former convictions may be shown by admission of the "record of the conviction," defined as an authenticated copy of the judgment of conviction, or other competent evidence, including direct questioning of the witness, of facts that would be contained in this record. *State v. Steele,* 150 Wash. 466, 469, 273 P. 742 (1929). *Accord, State v. Brewster,* 75 Wn.2d 137, 139, 449 P.2d 685 (1969); *State v. Stevick,* 23 Wn.2d 420, 161 P.2d 181 (1945), overruled on other grounds by *State v. Partridge,* 47 Wn.2d 640, 646, 289 P.2d 702 (1955).

The State argues that the "record" of the prior convictions includes any information which is contained in the court file of the prior criminal proceeding, including specific testimony from the transcript of trial in the prior proceeding. As such, it argues that the prosecutor's questions eliciting the details of defendant's prior crimes are admissible to attack his credibility in a *subsequent* trial because they were contained in a transcript of the prior trial or in other portions of the court file. This overly broad interpretation of the "record" for this purpose is not supported by case law in this state, which holds that questions designed to show a record of criminal misconduct for purposes of affecting credibility are limited to the fact of the conviction, the type of crime the witness was convicted of and the punishment imposed. *State v. Sayward,* 66 Wn.2d 698, 699, 404 P.2d 783 (1965). *See also State v. Beard,* 74 Wn.2d 335,

---

[3]Under ER 609 evidence of convictions of prior crimes not relating to dishonesty or false statement may now be admitted only after the trial court balances the probative value of the prior conviction as it relates to the credibility of the witness against potential prejudice to the defendant. Washington Rules of Evidence (ER) 609(a)(1) (effective April 2, 1979).

338, 444 P.2d 651 (1968); *State v. Lindsey,* 27 Wn.2d 186, 190, 177 P.2d 387 (1947).

The details of the acts leading to the prior convictions are not admissible under this rule, as the only purpose of such information in a subsequent trial on an unrelated offense is to bring irrelevant evidence before the jury to insinuate that conviction of the prior offense somehow is proof of defendant's guilt in the present action. *State v. Lindsey, supra; State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950). Likewise, evidence of other acts of misconduct which did not result in a conviction are irrelevant and not admissible. *E.g., State v. Sayward, supra; State v. Russell, supra; State v. Mack, supra.*

■ We now turn to whether the prosecutor's misconduct constitutes reversible error. A prosecuting attorney is a quasi–judicial officer. The court in *State v. Huson,* 73 Wn.2d 660, 663, 440 P.2d 192 (1968), characterized the responsibility and duties of this officer with the following:

> He represents the state, and in the interest of justice must act impartially. His trial behavior must be worthy of the office, for his misconduct may deprive the defend-ant of a fair trial. Only a fair trial is a constitutional trial. *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956).
>
> We do not condemn vigor, only its misuse. When the prosecutor is satisfied on the question of guilt, he should use every legitimate honorable weapon in his arsenal to convict. No prejudicial instrument, however, will be per-mitted. His zealousness should be directed to the intro-duction of competent evidence. He must seek a verdict free of prejudice and based on reason.

As in *Huson,* we believe the prosecutor's conduct in this case was reprehensible and departs from the prosecutor's duty as an officer of the court to seek justice as opposed to merely obtaining a conviction. (CPR) EC 7–13. We also note that defense counsel, a competent and experienced trial attorney, by failing to make timely objections[4] and by

---

[4]Defense counsel explained this lack of diligence in part during oral argument to this court when he expressed confusion over the fact at trial that the name of

refusing a suggested curative instruction, may have effectively waived defendant's objection to such conduct. *Seattle v. Harclaon,* 56 Wn.2d 596, 354 P.2d 928 (1960). However, in view of our reversal on other grounds we need not reach the question of whether prosecutor's misconduct coupled with timeliness, or lack thereof, of defense objections and refusal to urge a curative instruction, rose to the level of reversible error.

Defendant's conviction is reversed and remanded for a new trial.

PETRIE, A.C.J., and PEARSON, J., concur.

Reconsideration denied April 6, 1981.

Review denied by Supreme Court June 12, 1981.

the victim in both the present and one prior offense was Smith. "Gunboat" Smith was not the same person as the victim, Carl Smith, in this case.