[No. 6895-1-III. Division Three. June 24, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL R. HOFFPAUIR, *Appellant*.

---

*C. E. Hormel* and *Hormel & Aiken,* for appellant (appointed counsel for appeal).

*Paul A. Klasen, Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

McINTURFF, J.—Michael Hoffpauir appeals his convictions of first degree burglary and third degree theft. The dispositive issue is whether the voice identification procedure used by the local marshal was sufficiently suspect to warrant suppression as an inadmissible fruit of an illegal detention or to give rise to a substantial likelihood of misidentification. We affirm.

On May 8, 1984, Coulee City Marshal Charles Stokoe responded to a call from Mrs. Gertrude Baycroft at 12:45 a.m. She informed the marshal there had been an intruder in her home, approximately 5 feet 6 inches, 145 pounds, wearing a baseball cap. She further indicated she would be able to make a voice identification as he had spoken with a speech impediment. The intruder had taken approximately $6 and some change and had asked for and received a "big love".

Because the marshal was familiar with Mr. Hoffpauir's manner of speech, and had observed Mr. Hoffpauir walking down the street sometime earlier that evening, he proceeded to Mr. Hoffpauir's temporary residence at the Coulee City Garden Apartments. Finding Mr. Hoffpauir home, the marshal (who was in uniform and driving a marked car) asked Mr. Hoffpauir to accompany him "because there had been a problem downtown." Mr. Hoffpauir agreed and climbed into the backseat of the patrol car, even though the marshal advised him he did not have to go, nor was he under arrest. While en route, he told Mr. Hoffpauir they were proceeding to the Baycroft residence at First and Douglas to enable Mr. Hoffpauir to talk to her, to "ask her about the weather."

They proceeded to the front door; the marshal told Mr. Hoffpauir to stand to the side of the door. After Mrs. Baycroft appeared, he asked her to listen to Mr. Hoffpauir. "[A]t first he tried to disguise his voice, he tried deepening his voice and I told him, 'No, go ahead and talk to her in your normal voice', and when he did she confirmed he was the subject." Mr. Hoffpauir was then arrested, advised of his rights and subsequently found guilty by a jury of first

degree burglary and third degree theft.

First, Mr. Hoffpauir argues he was entitled to constitutional protections prior to his participating in the voice identification process. Specifically, he contends the marshal's actions constituted a deception that violated his rights, citing *State v. Hawkins,* 27 Wn. App. 78, 615 P.2d 1327 (1980); *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969); and *Hayes v. Florida,* 470 U.S. 811, 84 L. Ed. 2d 705, 106 S. Ct. 1643 (1985).

■ Our review of *Hawkins* discloses issues concerning statements made by the defendant during police interrogation after he voluntarily submitted himself to police custody. Here, there were no statements made by Mr. Hoffpauir during the ride to the Baycroft home. Further, probable cause to arrest arises when an officer has reasonable grounds to suspect the individual is guilty of a crime. Mere suspicion before the supporting circumstances are reasonably developed is not enough to turn "routine investigation" into custodial interrogation. *State v. Green,* 91 Wn.2d 431, 436, 94 Wn.2d 216, 588 P.2d 1370, 616 P.2d 628 (1980).

The court found Mr. Hoffpauir accompanied the marshal voluntarily. The marshal stated he did not have enough to support probable cause absent the voice identification. Mr. Hoffpauir's testimony at trial does not indicate he was being coerced or acting under duress. The marshal advised Mr. Hoffpauir he was under no obligation to accompany him nor was he under arrest. Based upon the record, there is substantial evidence to support the court's finding Mr. Hoffpauir's actions were voluntary. *People v. Herron,* 89 Ill. App. 3d 1048, 412 N.E.2d 1365 (1980), *cert. denied,* 454 U.S. 1080, 70 L. Ed. 2d 614, 102 S. Ct. 633 (1981); *United States v. Mendenhall,* 446 U.S. 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870, *reh'g denied,* 448 U.S. 908, 65 L. Ed. 2d 1138, 100 S. Ct. 3051 (1980).

If this court were to conclude the ride was not taken voluntarily, *Davis* and *Hayes,* cited by Mr. Hoffpauir, would require us to reverse the judgment. In both of those cases,

the suspects did not consent to be transported, and the police were without probable cause for an arrest, nor did they have a warrant; their convictions were reversed. However, that is not the situation here, and as noted in *Hayes,* at 817:

> There is thus support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch. Of course, neither reasonable suspicion nor probable cause would suffice to permit the officers to make a warrantless entry into a person's house for the purpose of obtaining fingerprint identification.

(Citations omitted.) While it is necessary in this case to substitute voice identification for fingerprinting, the concept is the same. We also note that had the evidence not supported the court's conclusion Mr. Hoffpauir consented to be transported, the marshal would not have had the authority to remove Mr. Hoffpauir from his home, absent a warrant. *Cf. State v. Gardner,* 28 Wn. App. 721, 626 P.2d 56 (1981) (suspects transported six blocks so their footprints could be matched with those by a stolen van); *Buckingham v. State,* 482 A.2d 327 (Del. 1984) (transporting of robbery suspect to store for identification proper); *Wilkerson v. United States,* 427 A.2d 923 (D.C.) (transporting of rape suspect half block to crime scene for identification proper), *cert. denied,* 454 U.S. 852, 70 L. Ed. 2d 143, 102 S. Ct. 295 (1981); *District of Columbia v. M.M.,* 407 A.2d 698 (D.C. 1979) (transporting reasonable where crime scene close proximity to stop and purpose was to identify suspect); *People v. Lippert,* 89 Ill. 2d 171, 432 N.E.2d 605 (transport legitimate investigatory procedure where short distance is involved and purpose is to identify suspect), *cert. denied,* 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92 (1982).

Mr. Hoffpauir next argues he was entitled to the assist-

ance of counsel prior to the voice identification, because he was in custody after he entered the police vehicle. *State v. Smith,* 36 Wn. App. 133, 672 P.2d 759 (1983). Additionally, he contends he was asked to violate his Fifth Amendment right against self–incrimination.

██ Counsel is required at all lineups and showups after criminal proceedings have commenced, but is not required from initial detention to formal arrest. *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877, 1882 (1972); *United States v. Wade,* 388 U.S. 218, 235–37, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *State ex rel. Juckett v. Evergreen Dist. Court,* 100 Wn.2d 824, 828, 675 P.2d 599 (1984); *Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 800, 718 P.2d 789 (1986).

In *State v. Judge,* 100 Wn.2d 706, 675 P.2d 219 (1984), the court held the taking of a blood sample was not a "critical stage" of the proceedings where the defendant was under arrest but had not been charged with negligent homicide. The same conclusion was reached with respect to a preinformation lineup, *State v. Woods,* 34 Wn. App. 750, 760, 665 P.2d 895 (1983) (although the defendant was represented by a public defender at the lineup).

The right to counsel at a showup for purposes of making a voice identification has been answered in *State v. Packard,* 184 Conn. 258, 269, 439 A.2d 983, 990 (1981):

> Since at the time of the voice–up, criminal charges had not been formally made nor had adversary judicial proceedings been initiated against the defendant, it is not necessary for us to decide whether this voice identification procedure was more similar to a lineup or to a photographic display. Under both the [*United States v.*] *Ash* [413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568 (1973)] and *Wade–Kirby* rules, the sixth amendment did not grant the defendant the right to have counsel present at the time his voice was identified by the victim.

(Footnote omitted.) *See also State v. Furrow,* 424 A.2d 694, 697 (Me. 1981); *State v. Emery,* 230 N.W.2d 521, 524 (Iowa 1975). Here, the record indicates there was no probable cause to arrest nor was a formal arrest made until after the

voice identification had been completed. Thus, no Sixth Amendment right to counsel attached.

■ Neither did the voice showup violate Mr. Hoffpauir's Fifth Amendment right against self–incrimination. *See United States v. Wade,* 388 U.S. at 222–23:

> We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. . . . Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a "testimonial" nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt.

*See also United States v. Dionisio,* 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973); *State ex rel. Juckett v. Evergreen Dist. Court, supra,* where chemical testing of blood or breath is not a violation of privilege against self–incrimination, nor is appearance in police lineup. *Accord, State v. Cook,* 70 Wn.2d 715, 720, 424 P.2d 1006 (1967).

■ Third, Mr. Hoffpauir contends the voice showup was "unnecessarily suggestive and conducive to irreparable mistaken identification" pursuant to *Stovall v. Denno,* 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). We note in the later case of *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977), the United States Supreme Court considered a similar issue: the police had used a single photograph in order to identify the defendant. The issue was whether such a suggestive procedure when no emergency conditions existed was sufficient to compel exclusion of the identification. After reviewing *Stovall v. Denno, supra,* and *Neil v. Biggers,* 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972), the Court concluded in 432 U.S. at 114:

> reliability is the linchpin in determining the admissibility of identification testimony for both pre– and post–*Stovall* confrontations. The factors to be considered are set out in *Biggers.* 409 U. S., at 199–200. These include

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*See also State v. McDonald,* 40 Wn. App. 743, 746, 700 P.2d 327 (1985); *State v. Hebert,* 33 Wn. App. 512, 514, 656 P.2d 1106 (1982).

Where the identification is by voice alone, the absence of some comparison involves grave danger of prejudice to the suspect, for as one noted commentator has pointed out:

"[E]ven in ordinary circumstances we must be cautious and accept only with reserve what a witness pretends to have heard. All the more must it be so if there are special difficulties in the way—if, for example, the voice comes from a great distance, if it is shrill, muffled, or presents any other peculiarity. The same is true if the person whose voice has been heard is of a different nationality from the listener, if he speaks another dialect, or is better or less educated. Criminal Investigation, Jackson ed. (5th ed. 1962), at 41–42.

*Palmer v. Peyton,* 359 F.2d 199, 201 (4th Cir. 1966). The use of a single voice is a procedure devoid of decency and fairness. *Palmer,* at 202. One–on–one auditions should be avoided, with the use of a "lineup" procedure as the best approach. *Commonwealth v. Marini,* 375 Mass. 510, 378 N.E.2d 51, 56 (1978). The words chosen to be spoken should be *different* than the ones heard at the scene of the crime. *Marini,* 378 N.E.2d at 56 (citing Note, 45 Miss. L.J. 489, 502–03 (1974); Note, 55 Minn. L. Rev. 779, 819 (1971); Murray, *The Criminal Line–Up at Home and Abroad,* 1966 Utah L. Rev. 610, 628). However, there are occasions when a single voice showup is the more fair procedure, as where a suspect is apprehended shortly after the crime and is brought promptly to the victim for voice identification. *Wise v. United States,* 383 F.2d 206 (D.C. Cir. 1967), *cert. denied,* 390 U.S. 964, 19 L. Ed. 2d 1164, 88 S. Ct. 1069

(1968); *Commonwealth v. Torres,* 367 Mass. 737, 740, 327 N.E.2d 871 (1975); *Roper v. Beto,* 454 F.2d 499 (5th Cir. 1971), *cert. denied,* 406 U.S. 948, 32 L. Ed. 2d 336, 92 S. Ct. 2053 (1972). The rationale for permitting such a showup is the need for a quick solution to the crime, the desirability of a fresh, accurate identification by the victim and the possible exoneration of the suspect. *United States v. Kessler,* 692 F.2d 584 (9th Cir. 1982); *State v. Hudson,* 508 S.W.2d 707 (Mo. Ct. App. 1974).

Even if this court is to assume the procedure used by Marshal Stokoe was highly suggestive, it must also inquire into the "totality of the circumstances" to determine whether the identification was in fact reliable. *Manson,* 432 U.S. at 114; *McDonald,* at 746.

Although she never made a visual identification of Mr. Hoffpauir, Mrs. Baycroft was able to relate several characteristics which fit Mr. Hoffpauir: he was of medium height, 145 pounds, wearing a baseball cap, smelled of alcohol, and talked with a speech impediment. Mr. Hoffpauir fit all these characteristics. In addition, she was quite positive and firm in the correctness of her decision when she made the voice identification. She had had an adequate opportunity to know his voice, as he talked "incessantly" during their confrontation; and to determine his size after giving him a hug. The identification was made almost immediately after the crime occurred, while her memory was still fresh. Thus, there was ample evidence to find a reliable identification had been made. We conclude there was no error. *Roper v. Beto, supra* at 502 (voice identification of rape suspect not impermissibly suggestive within totality of circumstances); *Burtis v. Dalsheim,* 536 F. Supp. 805 (S.D. N.Y. 1982) (absence of visual description will not invalidate an otherwise acceptable voice identification).

Finally, Mr. Hoffpauir argues there was insufficient evidence to support the verdict because the only evidence which connected him to the crime was his pronunciation of the word "weather" as "weatha". No other evidence was produced by the State.

Based on the review of facts set out in the prior issue, there was sufficient evidence to find Mr. Hoffpauir guilty beyond a reasonable doubt. In addition to his physical description, Mr. Hoffpauir admitted he had been out in the neighborhood that evening, had been drinking at a local tavern, and had been wearing a baseball cap. Given the close proximity between his apartment and Mrs. Baycroft's residence, there was sufficient time for him to commit the crime and yet be at home when the marshal came by a short time after the crime.

The judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Review denied by Supreme Court October 7, 1986.