IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  39375-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DARIN R. BARRY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Darin Barry appeals his convictions for fourth degree assault, unlawful imprisonment, malicious mischief, and two counts of felony harassment (threat to kill).  He argues the trial court erred by (1) admitting statements he made to a deputy without first finding he knowingly and voluntarily waived his right to remain silent, and (2) admitting body camera videos in violation of chapter 9.73 RCW.  We disagree with his first argument, conclude he failed to preserve his second argument, and affirm.

FACTS

Deputy Christopher Olin responded to a domestic disturbance that involved Darin Barry attacking two acquaintances during which time he threatened to kill each of them and threw one of their phones into his fireplace.

On the morning of trial, the court held a CrR 3.5 hearing to determine the admissibility of statements Barry made to Deputy Olin. At the hearing, Deputy Olin testified that he read Barry his constitutional rights and asked him whether he understood those rights. The State offered body camera videos, which Deputy Olin testified were true and accurate depictions of his interactions with Barry. Barry did not object to the use of these videos in the CrR 3.5 hearing.

One video depicts Deputy Olin telling Barry he is "under arrest for assault, among other things." Ex. 160. Barry requests that Deputy Olin tell him "why [Deputy Olin] is reading [him his] rights." *Id.* Although the conversation immediately after the reading of the rights seemingly confirms the reading, the video did not capture the reading of the rights.

On cross-examination, Deputy Olin testified he did not initially advise Barry he was being recorded but did inform him later. Deputy Olin testified he read Barry's

2

*Miranda*[1] rights to him from a card, but did not have him sign the card. The card also does not appear in the record. Deputy Olin admitted that Barry never affirmatively acknowledged he understood his rights.

In its oral ruling, the court found that Deputy Olin read Barry his constitutional rights and concluded that Barry had waived those rights by speaking without coercion to the officer. The court held that Barry's statements were admissible.

At trial, the State called witnesses to support the charges, including Deputy Olin. Through the deputy, the State offered the body camera videos, which included Barry's custodial statements. When asked if he objected to the admission of one of the videos, Barry responded he did not. After the State sought to admit a second video, Barry reversed himself and responded, "Your Honor, may adjust in regards to all of these exhibits, I'd like to preserve my prior objections. For that reason, I would object to all of them. I'll leave it at that." Rep. of Proc. (RP) at 312. The court overruled the objection and admitted both videos.

The jury returned a mixed verdict, finding Barry not guilty of some of the most serious charges, but finding him guilty of others, including felony harassment. The trial court imposed a standard range sentence, and Barry timely appealed to this court.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 39375-5-III
*State v. Barry*


ANALYSIS

CrR 3.5 HEARING

Barry first assigns error to the trial court's admission of his recorded statements. He argues the trial court erred by admitting the statements without first finding that he knowingly and voluntarily waived his rights.[2]

We review a trial court's denial of a suppression motion for whether substantial evidence supports challenged findings of fact. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). We review its legal conclusions de novo. *Id.* Substantial evidence means evidence sufficient to persuade a fair-minded person of the truth of the stated premise. *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999). Although CrR 3.5 requires courts to enter written findings of fact and conclusions of law, if the oral ruling and hearing record are "'sufficiently comprehensive and clear that written facts would be a mere formality,' the trial court's failure to enter mandatory written findings and conclusions is harmless." *State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011) (quoting *State v. Hickman*, 157 Wn. App. 767, 771 n.2, 238 P.3d 1240 (2010)).

---

[2] Barry's first argument is hard to discern. In his brief, he discusses what occurred during the CrR 3.5 hearing, he then sets forth several principles of law, and he then concludes: "Here, the trial court failed to find after Deputy Olin was unable to testify that he fully advised Mr. Barry of *Miranda* warnings. Nevertheless, the court found a waiver by Mr. Barry. The court failed to require that the defendant had made knowing and voluntary waiver of his rights contrary to the defendant's right. As such he should be given a new trial consistent with established case law." Br. of Appellant at 27.

4

Under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), a suspect in custody must be warned before questioning that "(1) he has the absolute right to remain silent, (2) anything that he says can be used against him, (3) he has the right to have counsel present before and during questioning, and (4) if he cannot afford counsel, one will be appointed for him." *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 434, 114 P.3d 607 (2005). *Miranda* rights can be waived implicitly. *North Carolina v. Butler*, 441 U.S. 369, 374, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). However, the State retains the burden of showing that the accused intelligently and voluntarily waived their *Miranda* rights by a preponderance of the evidence. *State v. Coles*, 28 Wn. App. 563, 567, 625 P.2d 713 (1981). Freely and selectively responding to police questioning after initially asserting *Miranda* rights supports a finding of waiver. *Id.*

Here, the trial court failed to enter written findings and conclusions after the CrR 3.5 hearing. Nevertheless, the court's oral findings and conclusions are sufficient for us to understand the reasons for its ruling. The failure to enter written findings and conclusions therefore is harmless.

The trial court found that Deputy Olin read Barry his constitutional rights and concluded that Barry's statements after being informed of those rights constituted a valid waiver. It did not expressly find that Barry knew each of the four rights associated with a valid waiver nor did it expressly find that Barry voluntarily waived those rights. Rather,

5

it directed the State "to prepare findings of fact and conclusions of law . . . to be . . . signed by me and filed in the court." RP at 136.

"[A]n appellate court may imply or infer the existence of a finding of fact 'if—but only if—all the facts and circumstances in the record . . . clearly demonstrate that the omitted finding was actually intended, and thus made, by the trial court.'" *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 54, 534 P.3d 339 (2023) (alteration in original) (emphasis omitted) (quoting *In re Welfare of A.B.*, 168 Wn.2d 908, 921, 232 P.3d 1104 (2010)). Our review of the record and the trial court's ruling leaves us with no doubt that it would have entered the two express findings noted above had the State fulfilled its obligation to prepare written findings and conclusions for the court to enter. In short, we imply the two omitted findings because the trial court actually intended to make them and would have entered them. Because we are willing to imply those two findings, we reject Barry's argument.[3]

---

[3] The State did not ask Deputy Olin to recite the rights he read from his card. It also did not present written findings and conclusions for the trial court to enter. The State's first oversight risked the trial court finding that Barry was *not* advised of his constitutional rights. Its second oversight risked our reversing Barry's convictions. One reason we do not reverse Barry's convictions is because there is nothing in the recordings that could have affected the verdicts.

BODY CAMERA FOOTAGE

Barry again assigns error to the trial court's admission of the body camera

videos and argues the videos should have been excluded because they violate

chapter 9.73 RCW.

RCW 9.73.030(1)(b) generally makes it unlawful to record any private

conversation without first obtaining the consent of all parties. With narrow exceptions,

RCW 9.73.050 renders any information obtained in violation of RCW 9.73.030

inadmissible at trial. RCW 9.73.090(1)(a)-(c) provides safe harbors from these rules.

RCW 9.73.090 provides:

> (1)  The provisions of RCW 9.73.030 through 9.73.080 shall not apply to
> police, fire, emergency medical service, emergency communication center,
> and poison center personnel in the following instances:
>      . . . .
>      (b)  Video and/or sound recordings may be made of arrested persons
> by police officers responsible for making arrests or holding persons in
> custody before their first appearance in court. Such video and/or sound
> recordings shall conform strictly to the following:
>      (i)  The arrested person shall be informed that such recording is
> being made and the statement so informing him or her shall be included in
> the recording;
>      (ii)  The recording shall commence with an indication of the time of
> the beginning thereof and terminate with an indication of the time thereof;
>      (iii)  At the commencement of the recording the arrested person shall
> be fully informed of his or her constitutional rights, and such statements
> informing him or her shall be included in the recording;
>      (iv)  The recordings shall only be used for valid police or court
> activities.

In general, we will not permit an appellant to raise an argument for the first time on appeal. RAP 2.5(a). The underlying policy of the rule is to encourage the efficient use of resources. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

Here, Barry failed to argue to the trial court that the videos should be excluded because they violated his privacy under chapter 9.73 RCW. We therefore decline to review Barry's second claim of error.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____      _____
Fearing, J.                             Cooney, J.